[Civ. No. 5839. Second Appellate District, Division One.—September 29, 1927.]

In the Matter of the Estate of M. E. MELVIN, Deceased. MARTHA E. MELVIN et al., Appellants, v. MABEL MELVIN SIMINGTON, as Executrix, etc., Respondent.

Robert F. Shippee and Henry I. Brouillette for Appellants.

Lucien J. Clarke and Clarke & Wilson for Respondent.

McLUCAS, J., *pro tem.*—This is an appeal taken from a judgment in favor of respondent on a petition for revocation of probate of the will of M. E. Melvin, deceased. The contest was on three grounds: First, that the decedent was of unsound mind at the time of the execution of the will; second, that the purported will was not executed in the manner required by law, in that the purported will was not, in the form in which it now appears, signed by the decedent in the presence of the witnesses, nor signed by the witnesses in the presence of the deceased; third, that the execution of the purported will was procured by undue influence exercised

upon the decedent by his daughter named executrix of the will, Mabel Melvin Simington, and a sister of the deceased, May Melvin. After the contestants had rested, the court granted respondent's motion for a nonsuit as to the second and third causes of action or grounds of contest and denied the motion as to the first cause of action. Upon submission of the case a verdict was returned that the deceased was of sound mind at the time of the execution of the will.

Appellants concede that the trial court properly granted a nonsuit as to the second ground of contest, but urge that the court erred in granting respondent's motion for a nonsuit on the third ground of contest, namely, that the will was executed under undue influence. Believing the case must be reversed upon other grounds, discussion of this point will be omitted.

The will of the deceased was executed July 13, 1922. During the trial, for the purpose of showing that the surviving wife had no interest in the estate, respondent introduced in evidence certified copies of a decree of divorce granted by the district court of Marshall County, Iowa, on July 13, 1922, the same day the will was executed, wherein the plaintiff M. E. Melvin, deceased, was divorced from Martha E. Melvin. The respondent also introduced a certified copy of the ruling of the supreme court of Iowa affirming the judgment of the lower court. The case was submitted to the jury upon the sole issue as to whether the testator was of sound mind at the date of the execution of the will, July 13, 1922. After the jury had deliberated for an hour and three-quarters the jury returned into court and the following proceedings occurred (italics ours):

"The Court: I understand you have not agreed yet?

"The Foreman: No, your Honor. This lady wishes to ask a question.

"The Court: What is the question?

"A Juror: Shall I ask it here or from the desk?

"The Court: Yes, ask it there.

"The Juror: *I wanted to ask if the fact that he was granted a divorce—does that prove that he was of sound mind?*

"The Court: That is for the jury to determine, whether it does or not. You have to consider that fact.

"The Juror: *They argue that that proved he was sound.*

"The Court: The fact that it appears from the testimony that he was there during all that trial, and also there was testimony as to whether the question of his soundness or unsoundness was raised at that time—it is for the jury to determine the effect that trial would have; how much proof that is. It is for the jury to determine from the facts, whether he was of sound or unsound mind, and the fact that he went through that trial is one of the facts. Any other questions?

"Another Juror: *I would like to ask a question. Would a judge in Iowa grant a decree of divorce to anyone that was not in proper mental condition?*

"The Court: I cannot answer you that.

"The Juror: Did they have a jury trial?

"The Court: I don't know whether they did or not. I would not answer that, if I did know. *I will answer this, that a judge—I don't think that a judge would grant a divorce if he was satisfied he was of unsound mind.* Any further I won't go. Is that all?

"The Foreman: Yes."

It thus appears clearly that the jury was attempting to secure an opinion from the trial judge as to whether in his opinion the testator was of sound mind. They finally succeeded in getting an expression of an opinion as to what the Iowa court would do if satisfied the testator was of unsound mind.

The jury then retired and returned a verdict that deceased was of sound mind at the time of the execution of the will, the court having expressed his opinion on a question of fact that he did not think a judge would grant a divorce if he was satisfied that the plaintiff (testator) was of unsound mind. In our opinion, under the circumstances in this case, this was prejudicial error, the issue in the case being whether the testator was of sound mind at the date of the execution of the will, which date was identical with the date when the divorce was granted to the deceased. ▮ The record does not show whether counsel for appellants were present when the foregoing remarks were made by the trial court. The respondent contends that a party cannot object for the first time on appeal to remarks of the trial judge which were allowed to pass at the time without objection. If counsel were not present, they had no opportunity to object. ▮

Moreover, these remarks were not made during the trial, but were made when the jury returned for further instruction, and all objections are deemed to be taken to instructions given to the jury. The testimony was in direct conflict, several witnesses testifying that in their opinion the testator was of unsound mind, others that he was of sound mind at the date of the execution of the will.

Certain remarks made by the court during the trial were prejudicial to the rights of contestants. Many of these are quoted in appellants' brief, but lack of space forbids their repetition here. For illustration, we quote from the record (Trans., p. 185, ll. 4 to 8):

"Q. You say you did not say that the only thing you noticed was that he was excitable, that was all?

"A. No, I didn't say that.

"The Court: He did say just that.

"Mr. Anderson: Well, I say that is his answer."

Commenting on the evidence, the court says (Trans., p. 188, l. 23):

"The Court: Well, I think I will say, Mr. Anderson, right here, that for a real estate agent to go to anybody and try to get him to sell a house is not an indication of unsound mind.

"Mr. Anderson: I am inclined to agree with you, but I think that is a matter of argument.

"The Court: I don't care whether it is or not. It is a fact.

"Mr. Anderson: I will reserve an objection to the comment of the court on that."

Further comment by the court on the value of evidence appears (Trans., p. 206, l. 25):

"The Court: In all these cases, and in this case, Mr. Anderson, the testimony is offered of what was said, for the purpose of showing his unsoundness of mind, and then it is used for some other purpose; and I don't believe that testimony shows he was of unsound mind."

The court's rulings in sustaining objections to questions on the grounds that they were leading, when in fact they were not, frequently led to the exclusion of material and competent evidence. Among others to which reference is made by appellants, we quote (Trans., p. 236, l. 23):

"Q. How was he as to being able to carry on a connected conversation, whether he would talk about one thing connectedly straight through or whether he would branch off on other subjects.

"That is objected to as leading.

"The Court: Objection sustained.

"Mr. Anderson: Very well. (The answer omitted is as follows: 'A. He always branched off on subjects about his family and his self.')"

(Trans., p. 241, 1. 23):

"Q. What is the fact as to whether she became apparently more devoted to him than she had prior to that time?

"That is objected to as leading, your Honor.

"The Court: Objection sustained.

"Mr. Anderson: Very well.

" (The portion stricken out of the deposition is as follows: 'A. She said she left her housework and went to the court room because she expected him to die in the court room.')"

(Trans., p. 276, 1. 23):

" 'Q. What is the fact as to whether or not that seemed to be the chief topic on his mind when you would visit him?'

"That is objected to as leading, your Honor.

"The Court: Objection sustained."

(Trans., p. 277, 1. 7.):

" 'Q. In these several conversations, what is the fact as to whether or not he would repeat about the same line of conversation each time?'

"Mr. Clarke: That is objected to as leading.

"The Court: Objection sustained."

(Trans., p. 296, 1. 12):

"Mr. Anderson: The next question is: 'Q. What is the fact as to whether you noticed that same line of conduct on his part in later years?'

"Mr. Clarke: That is objected to as leading.

"The Court: Objection sustained."

█ A question is leading when it suggests to the witness the answer which the examining party desires. (Code Civ. Proc., sec. 2048.) Tested by this rule, we believe the court erred in sustaining objections to the questions propounded on the ground that they were leading.

█ Frequent rulings were made by the court against the admissibility of evidence without any objection being

made by respondent, as shown by appellant's brief. By constant interference and prejudicial rulings the hostile attitude of the court toward appellants must have been clear to the jury. In our opinion the conduct of the trial court was such that the appellants did not have a fair trial.

After examination of the entire cause, including the evidence, we are not prepared to say that the jury would have reached the same conclusion had these errors not been committed by the trial court, and we are of the opinion that the errors complained of resulted in a miscarriage of justice.

It is ordered that the judgment be reversed.

Houser, Acting P. J., concurred, and York, J., concurred in the conclusion.