[Civ. No. 7713. Second Appellate District, Division Two.—April 6, 1933.]

RAY DAVIS, Respondent, v. OLIVER PEZEL, Appellant.

Don S. Irwin for Appellant.

Libby & Sherwin for Respondent.

STEPHENS, J.—On July 1, 1930, a judgment was obtained in the superior court by plaintiff against defendant for the sum of $1,000 for malicious prosecution. Motions for nonsuit and for a directed verdict were made by defendant and denied by the court. The defendant appeals and treats his grounds of appeal under four divisions, which will hereinafter be treated separately as presented in his opening brief.

The facts upon which the action is based are as follows: On the fourteenth day of July, 1929, appellant, as an automobile merchant, sold respondent a second-hand automobile on the usual installment plan, appellant retaining title until full payment of purchase price. The purchaser represented that he resided at 1629¼ Acacia Street, Los Angeles, was employed at the Terminal Garage and had an income of $230 per month. Eight days thereafter he went to appellant's establishment to take up a post-dated check and to request some repairs on the car under the guarantee. Appellant claimed the guarantee did not cover such repairs, and it

would seem gave respondent little attention. Respondent left but returned in a few days to request a credit of $14.65, the sum he had paid for such repairs. Appellant again disclaimed responsibility. Respondent testified that appellant became very angry with respondent, ordered him from his store and that they almost came to blows. This appellant denies. At this meeting respondent told appellant he had the "pink" or ownership slip. It had been erroneously issued to him by the state motor vehicle department.

Respondent did not make the two semi-weekly payments of $12.50 each following the purchase, and appellant sent an agent to locate respondent for the purpose of collecting the delinquent payments or to repossess the car. No trace of respondent was found at the given address but the car was located a few days later on a vacant lot a few blocks distant therefrom. It was taken to appellant's repair-shop across the street from the store. Thereafter respondent went to the man in charge and exhibiting the "pink slip" took the car with him over the man's objection. Again an unsuccessful endeavor was made to locate respondent at the given address and Inspector Crane of the division of motor vehicles and appellant went to the district attorney's office and there laid the case before a deputy. He also consulted an attorney at law. The matter was laid before the attorney and the deputy district attorney substantially as here outlined except for the altercation mentioned. This appellant claims never occurred. There is testimony that the attorney and the deputy district attorney advised him to sign and swear to the criminal complaint. At the time the complaint was issued charging grand theft and violation of section 146 of the California Vehicle Act (August 24, 1929), and to the knowledge of appellant, respondent was confined in the city jail under a fifty-day sentence for violation of the Wright Act and he was arrested under the complaint when released from jail. While in jail respondent refused to reveal the whereabouts of the automobile and said to the insurance carrier's agent, "Try to get it." On October 23, 1929, appellant filed a claim and delivery action against respondent, which respondent answered and denied appellant's title and alleged that he, respondent, had the ownership slip. This is a fair generalization of the testimony in the case.

Point "I".

*"The verdict is contrary to and unsupported by the evidence."*

Upon the record of this case we cannot sustain appellant's contention. █ It is settled that the question of probable cause in malicious prosecution cases is for the court to determine and not the jury. Where there is conflicting evidence the question may be treated by submitting the conflicting testimony to the jury by special questions, or by presenting the testimony to the jury in hypothetical form. (*Franzen* v. *Shenk*, 192 Cal. 572 [221 Pac. 932].) Neither of these methods was used in the instant case; instead it was treated as an ordinary damage action. No point is made of this, however, and we cannot raise it here except for its incidental effect. There is not the slightest doubt but that there is conflicting evidence affecting the issue of probable cause in this case. If the altercation over the repair bill took place as respondent claims, it would be pertinent evidence to the issue of probable cause and to the issue of malice as well. There is other evidence that could be referred to, to the same effect, and in this connection, the jury had a right to decide whether or not appellant himself believed that the charged crimes had been committed. (*Franzen* v. *Shenk, supra.*)

█ Under this subhead, point one, appellant urges the defense of having acted upon an attorney's advice, but this is untenable as we have just seen that a part of the claimed facts were not related to either the private or public attorney. Indeed, under the main opinion in *Franzen* v. *Shenk, supra*, it would seem that not only this defense but practically every defense to a properly pleaded action in malicious prosecution must go to the jury in either one or the other of the methods above referred to. It is therein held that the defendant in a malicious prosecution suit must himself have believed at the very time that he initiated the prosecution that the crime had been committed, else probable cause is lacking. It would not be enough for him to say, "I had no absolute knowledge about it and entertained no belief of my own in the matter but I heard this and that and it seemed to me as a reasonable man that it might well be that a crime had been committed so I took steps to

prosecute." He must go further and say, "I *believed* that a crime had been committed." It follows that if this *belief* is essential to probable cause then the jury would have a right to weigh and decide the question of fact as to whether he actually did or did not have such *belief* at the time he acted to prosecute. (See dissenting opinions in the cited case.)

Since the court itself did not assume the duty of deciding the question of probable cause, but, instead, submitted the whole case to the jury under general instructions, and since no criticism of this course is made by either party, we have nothing to do in the premises but follow the rule that where there is substantial conflict we cannot disturb the jury's conclusions.

### Point "II".

*"Error of the Trial Court in Denying Appellant's Motion for Nonsuit and Appellant's Motion for Directed Verdict."*

As there is substantial conflict in the evidence, the court was right in denying both motions. Had a correct method of deciding the presence or absence of probable cause been adopted in the case these motions would have been considered on a different basis.

### Point "III".

*"Misconduct of the Trial Judge."*

We approach this matter with diffidence. We have long known of the excellence of the judge who presided in the court below and we appreciate the difficulties and annoyances besetting any trial judge. But these considerations must yield to the principle that obtains in this state's courts that the jury must have free rein under the law to determine the facts of the case without intimation thereon from the judge. Whatever loose street criticism is current it is nevertheless a very fortunate fact that citizens impaneled as jurors look up to and respect the person and opinions of judges presiding. They are quite apt to catch even a slight prejudicial act of the judge and enlarge it into a controlling feature of the case, the most careful and emphatic instructions to the contrary notwithstanding. Some of the comments and actions of the judge presiding in this case could well have impressed the jury with the idea that he

had more than a slight leaning toward the plaintiff's side of the case. We shall examine some of the proceedings with this in mind.

During the cross-examination of the plaintiff the "pink slip" (owner's certificate), which had been erroneously issued to him, was about to be passed over to the jury for examination. It will be remembered that respondent had stated to appellant at the time of the dispute about the repairs that he had the "pink slip" and that he had exhibited it later to the man in charge when he retook possession of the car from appellant's repair-shop. It would seem that appellant's knowledge of respondent's possession and use of this slip would have some evidentiary value upon the issue of probable cause. We quote from the transcript, page 54 et seq.: "The court: I don't see how the pink slip throws any light on it (probable cause) except he had it. I suppose there is no controversy on that, that he did have it. . . . It was never said he claimed to own it (the automobile) and that answer and that complaint (referring to the pleadings in the claim and delivery action) you read didn't state that he owned it. It could have been stricken out on motion as a conclusion of law. He didn't state he owned it. He said the certificate of ownership had been issued to him. . . . It doesn't dispute his testimony here this morning. The certificate of ownership was granted to him which did show and as a fact the certificate of ownership showed him as the owner. This pink slip, the purpose of it, I can[t] see that has any weight or materiality to show the want of probable cause or probable cause." It does not seem to require analysis of these statements to see that the jury could have received intimation from the court as to its view of certain evidence upon the important issue of probable cause. (*Stinson Canal, etc.*, v. *Lemoore Canal, etc.*, 45 Cal. App. 241 [188 Pac. 77].)

It will be remembered that upon the purchase of the automobile respondent gave a certain number of a certain street as his residence and that defendant through an agent sought to find plaintiff there. On redirect examination plaintiff below was shown an envelope addressed to him at the address given and asked if he received it at such address through the mail. Upon objection that the showing was immaterial plaintiff's counsel explained, "The reason for it is, if the

court please, the endeavor was made to show that nobody knew he lived there.'' Whereupon the court stated: ''That doesn't make any difference. Nobody knows where I live; I don't know where you live; still, I don't think you are criminals. No use of putting that in at this time.'' The prejudicial effect of this statement seems obvious. The court effectively advised the jury that he thought the failure to find respondent at the given address could be no step in creating the suspicion in appellant's mind that his automobile had been stolen.

Appellant was being examined by his attorney as to the trade or custom meaning of the term ''defective parts guarantee'', as it was used in the purchase agreement. The correct interpretation of this phrase, it would appear, would be in issue when the disagreement over the repairs had taken place. After objection, the attorney explained that the phrase covered the parts only and not cost of installation. If the dispute between the parties arose or did not arise through an honest misunderstanding, as evidence under this inquiry would have tended to show, it would have had its effect on the issue of malice, but the court would not go into the matter at all. This point is not appropriately grouped with actions of misconduct but we think the court's ruling was prejudicial error.

After the court had intimated its adverse ruling on a proposal to show that defendant below had consulted with and had obtained advice from officials of the state motor vehicle department, the following took place before the jury:

''Mr. Rollinson (attorney for defendant): 'I want to make an offer of proof.' The court 'Make it.' Mr. Rollinson: 'Probably the jury better be excused.' The court: 'No, I don't ask the jury to go out. The jury have got sense.' Mr. Rollinson: 'I don't want to take advantage of the plaintiff.' The court: 'You are not taking advantage of anybody. An offer of proof isn't evidence. If I permit you to prove it, they can consider it, and if I don't permit you to prove it they won't consider it.' Mr. Rollinson 'Let the record show that the defendant offers to prove by this witness that the officials of the State Motor Vehicle Department, after an investigation, had consulted with him with reference to what action should be taken against the plaintiff, and that if this defendant was permitted to testify he would testify

that the officials of the Motor Vehicle Department not only suggested, but requested that he immediately take this matter up with the district attorney of Los Angeles County and request that a warrant be issued for the plaintiff in this cause.' The court: 'It is immaterial what somebody in the automobile department told him to do. Supposing they told him to go out and murder him, that wouldn't justify murder because somebody in the automobile department told him to.' Mr. Rollinson: 'Then the offer of proof is denied, is that correct?' The court: 'Absolutely, yes.' "

Perhaps the court's ruling on the offer as a whole was correct in so far as the advice of an official in the motor vehicle department was concerned, yet if the proof had been permitted upon it a part of the offer might have shown the source of some of the information appellant acquired before he took action. The emphatic ruling of the court effectually cut off any inquiry along that line. The comparison used by the judge was extreme and not apt. It would not be ridiculous or ludicrous for a person faced with the problem that was appellant's to discuss the matter with the state motor vehicle department. The officials of such state department officially keep the registration of ownership of automobiles. This extreme language certainly was calculated to bring contempt and ridicule upon counsel and, by reflection, upon his client, the defendant in the case.

Appellant was testifying as to his talk with the deputy district attorney when the court asked the following question: "You didn't tell him that there was a dispute between you as to the amount due?" Appellant had claimed that he had no such dispute and appellant's attorney explained that the court's remarks, if allowed to stand, would be prejudicial, as they assumed that such dispute had taken place. The court replied: "Well, take an exception to it." Then followed quite a wrangle, in which the court assumed, erroneously, as we think, that appellant's attorney was advancing the idea that it was not proper for the court to ask a question. It seems to us that the incident was prejudicial to appellant's case.

Appellant's counsel put Mr. Crane, an official from the state motor vehicle department, on the stand, and asked him when he went to the district attorney's office. It will be remembered that Mr. Crane was with appellant when he

recited the case to the deputy district attorney. No objection was interposed, but the court interrupted the answer by saying, "It is immaterial. He is not sued here." Mr. Irwin (attorney for appellant): "It all goes, if the court please, to establish—" The court: "What does it amount to?" Mr. Irwin: "That the district attorney was advised of the facts fully. I think it goes to the question of what facts the district attorney had at the time he advised the issuance of the complaint, if the jury finds that he did so advise." The court: "Sustain the objection. This man is a speed cop, is he?" Mr. Rollinson: "He is an inspector. There was no objection to sustain." Then follows another wrangle in which it would appear that the court was rather testy in refusing to allow the witness to explain his position with the vehicle department and several times referred to him derisively as a "speed cop", though there was no evidence to this effect. Appellant's attorney offered to prove that the officer was an inspector with the duty of investigating the fraudulent issue of certificates of ownership, but this the court would not permit. Before the offer of proof was made counsel asked to approach the bench, but the court said: "I don't care what you offer to prove"; and, "We'll make it in the presence of the jury, they have got sense." After more wrangling the officer finally related the conversation with the deputy district attorney, but no further explanation of his status in the department of vehicles was had. It is our opinion that the witness should have been allowed to state his status and that repeated reference to him as a "speed cop" by the court and the court's rather rough handling of appellant's attorney was quite enough to communicate to the jury a deep suspicion that the court's sympathies were unfavorable to the defendant in the case. Grouping these incidents, it seems to us that they were very prejudicial to the defendant below, appellant here. (*In re Melvin's Estate,* 85 Cal. App. 691 [259 Pac. 980], and *Berguin* v. *Pacific Elec. Ry. Co.,* 203 Cal. 116 [263 Pac. 220].)

## Point "IV".

### *"Error in Instructions."*

Appellant complains that his proposed instruction "XIX" should have been given, but as it is nowhere in the

record we cannot consider the point. ■■ Appellant complains that the following definition as given by the court is erroneous: "Grand theft, so far as it appertains to this case, is the felonious stealing, taking or driving away an automobile, the personal property of another, with the intent then and thereby to permanently dispossess the owners thereof." This contention, we think, must be sustained. Theft as defined by section 484 of the Penal Code is as follows: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor, or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money or property or obtains the labor or service of another, is guilty of theft. . . . " The remainder of the section is more in the nature of explanation. Grand theft (Pen. Code, sec. 487) is theft of property valued over a certain sum or theft of certain enumerated objects, including an automobile. Section 490a of the Penal Code is as follows: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." Section 504a of the Penal Code reads as follows: "Every person who shall fraudulently remove, conceal or dispose of any goods, chattels or effects, leased or let to him by any instrument in writing, or any personal property or effects of another in his possession, under a contract of purchase not yet fulfilled, and any person in possession of such goods, chattels, or effects knowing them to be subject to such lease or contract of purchase who shall so remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof, is guilty of embezzlement." (Theft.)

When the facts of the instant case are considered in connection with these provisions it is obvious that the abbre-

viated definition of grand theft in the instruction complained of is fatally deficient.

The judgment is reversed.

Works, P. J., and Archbald, J., *pro tem.*, concurred.