[Crim. No. 2978.   First Dist., Div. One.   Sept. 27, 1954.]

THE PEOPLE, Respondent, v. LEWIS BOBBY
CALLOWAY, Appellant.

Lewis Bobby Calloway, in pro. per., and Robert M. Desky, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Defendant has appealed from the judgment entered upon his conviction of first degree robbery, also from the order denying his motion for a new trial.

The issues present questions as to (1) the timeliness of the appeal, (2) the sufficiency of the evidence, (3) asserted errors in the exclusion and admission of evidence, (4) asserted errors in instructions to the jury, and (5) the propriety of a recital in the judgment that defendant was armed with a deadly weapon at the time of the offense or with a concealed deadly weapon at the time of his arrest.

(1) *As to the timeliness of the appeal,* it appears that judgment was rendered August 21, and that notice of appeal was received by the trial court September 5, 1952.

The 10-day period expired September 2. August 31 was Sunday and September 1 a holiday.

The following appears from defendant's verified petition for a writ of mandate to require the preparation of the record upon this appeal:* Defendant is a layman not versed in or familiar with the rules relating to the time for filing notice of appeal or the manner in which an appeal is taken. He was without funds to retain counsel and required to act on his own behalf. Upon rendition of judgment he was put in the custody of the sheriff and placed in the Alameda county jail. August 25, 1952, he was delivered into the custody of the Director of Corrections at San Quentin. August 28th he had a conversation with Douglas Short, prison advisory counsel, at which time he was informed that he had plenty of time to file his notice of appeal and that he would be given a pass which would permit him to call upon Short at his office on August 29th for the purpose of preparing a notice of appeal. On August 28th he was informed that he was to be transferred to Folsom. On August 29, 1952, the transfer took place. He was thereby prevented from preparing his notice of appeal and from obtaining the aid of Short in preparing that notice. Had he not been prevented from keeping his appointment with Short, the notice would have been filed within the 10-day period.

Upon his arrival at Folsom, August 29th, defendant was placed in quarantine and was kept there until September 3d. During the period of quarantine, he had no access to law books nor did he have access to prison officials or any other person who might advise him or assist him in the preparation of a notice of appeal. While he was in quarantine a guard informed him that he would have to prepare his own legal papers without the assistance of any other person.

Upon his release from quarantine, September 3d, he prepared the notice of appeal, having obtained access to the prison library. On that day he had the notice acknowledged by a notary at the prison and left it with the notary for immediate mailing.

This evidence falls short of presenting the precise factual situation which obtained in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], but, undenied as it is, it tends to make

---

*The parties have stipulated that the record in the mandamus proceeding may be considered by this court upon this appeal. That record includes no verified answer to the petition and no counter affidavit. The state has declined the opportunity to present counter affidavits in the instant proceeding.

a prima facie showing that defendant was lulled into a false sense of security by a representative of the state, the opposite party in the litigation. Accordingly, as stated in *People* v. *Graff*, 104 Cal.App.2d 32, 34 [230 P.2d 654], ". . . the facts in this case come close enough to the exception to the rule stated in *People* v. *Slobodion* [*supra*], 30 Cal.2d 362 [181 P.2d 868], that this court is of the opinion it would be better to consider and pass upon the contentions made by defendant."

■ (2) *Defendant claims that the evidence is insufficient to identify him as the perpetrator of the crime.*

The offense occurred sometime after 1 a. m. on January 30, 1952, at a motor vehicle service station in Oakland. The station attendant, Richard Henson, positively identified the defendant as the person who robbed him. He was able to observe the robber's face for one and one-half minutes, which would seem sufficient time to implant in the victim's mind the identity of the robber. There is evidence that the station was well lighted. Though six weeks elapsed before Henson first made the identification, it cannot be said as a matter of law that the mental image was destroyed. The failure of Henson to describe the shoes and the fact that he was somewhat uncertain as to whether the offender wore gloves is not vitally significant. A person is not required to take an inventory of the clothing worn by a robber. The fact that Henson stated that the defendant did not have a mustache, while witnesses for defendant testified that he had a mustache on the day of the robbery, may be explained by the fact that he may not have noticed the mustache or the jury may not have believed the defendant's witnesses.

Substantial evidence is not lacking. The factors urged by defendant bear upon the credibility of witnesses and the weight of the evidence, appropriate for consideration by the triers of the facts. They are not of such a character as would enable a reviewing court to say, as a matter of law, that proof of the identity of the robber was lacking.

(3) *Did the court commit prejudicial error in its rulings on the admission and exclusion of evidence?* No.

■ Complaint is made of a ruling made during the direct examination of the appellant's mother, Mrs. Watkins: "Q. What parts were you referring to when you said he was smooth-shaven or whether he was smooth-shaven [at the time of her visit with the appellant the evening of January 30, 1952]? A. I can't remember whether he was smooth-shaven. Q. Did he have a mustache? A. Yes. MR. VU-

KOTA: I will object on the ground that it is viciously leading and suggestive: THE COURT: It is leading.''

We think the question should have been allowed. Not every question that calls for a "yes" or "no" answer is leading. (See *Pacific Portland C. Co.* v. *Reinecke*, 30 Cal.App. 501, 505 [158 P. 1041], and *Estate of Melvin*, 85 Cal.App. 691, 695-696 [259 P. 980]. But we do not see that any prejudice resulted. The second question following the passage above quoted brought out the answer that on January 30th he looked the same as ''in court today.'' He was wearing a mustache during the trial.

A similar incident occurred during the direct examination of defendant's witness, Mrs. Vernon: ''Q. Was Calloway normally smooth-shaven? A. No, he wasn't. He needed a shave. Q. I said normally? A. Yes, he had a mustache. What do you mean by normally? May I ask? Q. I was asking you if he was normally smooth-shaven? A. Well, yes. Q. And what do you mean by that? MR. VUKOTA: I will object to it as cross-examination of his own witness. THE COURT: Objection sustained.'' We do not consider the objection well taken but the exclusion of the answer in our opinion could not have prejudiced the defendant. The following immediately ensued: ''Q. On the night of the 30th, when you visited Mr. Calloway, was there anything about his appearance which was different from his appearance here today in Court? A. No. Q. And he looks just about the same? A. Yes, he does.''

■ Defendant complains also of the following questions and the answers which the district attorney elicited from one of defendant's witnesses: ''MR. PETTIS: Q. Mrs. Vernon, have you been here in Court all day today? A. Yes, since 8:30 or 9:30. Q. Were you in court during the time that the other witnesses were testifying? A. Yes, they just testified a while ago. Q. You were in court all during their testimony? A. Yes, I was. MR. PETTIS: No further questions.'' Defendant says this was prejudicial misconduct on the part of the district attorney and that the court should have excluded the questions on its own motion. We do not so view it; it seems too clear to require discussion. Nor would we so view it if defendant had interposed objections at the time, which he did not.

■ (4) *Defendant claims that by certain instructions the court, in effect, took from the jury the consideration and determination of the issue whether or not the robber bore a gun*

*and, if he did, whether or not the gun was a dangerous or deadly weapon.*

After defining robbery of the first and second degrees and dangerous or deadly weapons, the court instructed the jury that: ''A pistol or a revolver is a deadly weapon as a matter of law,'' and ''the evidence in this case is such that, as a matter of law, it presents no question as to the degree of the crime charged, and I instruct you that you must find the defendant either Not Guilty of the offense charged against him or Guilty of robbery in the first degree.'' These instructions were not requested by defendant. In fact, he did not offer any instructions.

Henson testified that the defendant had a gun in his right hand, stepped up behind Henson, put the gun in the latter's ribs and told him to lie down on the floor. Defendant then held the lid of the cash box open with the gun. Asked what made him let the defendant take the cash out of the cash box, Henson replied, ''I was afraid.'' Henson, obviously, was talking about a dangerous weapon, not a toy pistol. Although defendant's counsel cross-examined Henson quite extensively, he asked no questions about the gun, and his own evidence was addressed to the question of identity, he claiming that he was not the robber, that he was elsewhere upon that occasion.

During the trial, as we read the record, defendant made no issue concerning the gun, raised no doubt that the robber, whoever he was, carried a gun and that the gun he carried was a dangerous and deadly weapon. Under these circumstances there is no sound basis for taking exception to the instructions now under discussion. This is like the situation which obtained in *People* v. *Israel,* 91 Cal.App.2d 773, 783 [206 P.2d 62], concerning which the court in that case said: ''Under the evidence in this case, the defendants were either guilty of robbery in the first degree or not guilty of that offense, and no error appears.'' Also, under the circumstances, the objection comes too late when for the first time made upon appeal.

■ (5) *A statement that ''defendant was armed with a deadly weapon at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Section 3024,'' was erroneously included in the judgment.*

Such a provision, if properly included and legally operative, would have the effect of increasing the minimum term of

sentence from five years (Pen. Code, § 213 and subd. (c) of § 3024) to 10 years (Pen. Code, § 3024, subd. (b)).

It was not proper to include such a provision in the judgment herein because whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring the defendant within the operation of section 3024, relating to certain minimum penalties, "the fact that the defendant was so armed shall be charged in the accusatory pleading" and the "nature of the weapon must be set forth." (Pen. Code, § 969c.) This requirement is emphasized by section 3024 which declares in subdivision (e) that "Such minimum penalties shall apply only when such possession of a deadly weapon or previous conviction of a felony as above specified has been charged and admitted or found to be true in the manner provided by law. . . ."

The information herein made no such charge, mentioned no weapon, was wholly silent upon this subject.

Accordingly, the judgment should be corrected by deleting the recital under discussion. (*People* v. *Lesterjette,* 40 Cal. App.2d 327 [104 P.2d 844].)

The judgment is modified by deleting therefrom the words: "Defendant was armed with a deadly weapon at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Section 3024." As thus corrected, the judgment is affirmed. The order denying a new trial is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 11, 1954, and appellant's petition for a hearing by the Supreme Court was denied October 27, 1954.