[Crim. No. 5893.   In Bank.   Aug. 10, 1956.]

THE PEOPLE, Respondent, v. CHARLES M. HEAD, Appellant.

Charles M. Head, in pro. per., George H. Sullivan and Julien R. Bauer for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

CARTER, J.—The State has moved to dismiss the appeal in this criminal proceeding on the ground that the notice of appeal was not timely filed as required by rule 31, Rules on Appeal, specifying that an appeal in a criminal case must be taken within 10 days after rendition of judgment. On September 22, 1955, after trial by jury in which he was represented by counsel, defendant was convicted of the offense of permitting his wife to remain in a house of prostitution. He was thereupon sentenced to prison for the term prescribed by law. A written notice of appeal dated October 9, 1955, was filed with the clerk of the court on October 10, 1955, both of which dates are, of course, beyond the 10-day period.

Defendant endeavors to bring himself within *People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868], in which we held that

there was a timely filing of a notice of appeal where defendant in a state prison did all he could do by delivering his notice of appeal to the prison authorities for mailing to the court within the 10-day period but the authorities did not mail it in time. The Slobodion case has been uniformly followed (see *People* v. *Graff,* 104 Cal.App.2d 32 [230 P.2d 654]; *People* v. *Calloway,* 127 Cal.App.2d 504 [274 P.2d 497]; *People* v. *Stinchcomb,* 92 Cal.App.2d 741 [208 P.2d 396]; *People* v. *Frye,* 117 Cal.App.2d 101 [255 P.2d 105]; *People* v. *Aresen,* 91 Cal.App.2d 26 [204 P.2d 389, 957]; and cases cited *infra*).

In his original affidavit in opposition to the State's motion to dismiss the appeal, defendant stated that after judgment he had no money to pay his trial attorney to take an appeal and has "very little schooling" and did not know how to appeal and had no counsel to advise him; that he did know there was a "dead line" on the taking of an appeal but did not know what it was; that after he was sentenced he was held by the sheriff of San Bernardino County (where he was convicted) until September 26, 1955, when he was transferred to the "Receiving Center" of the penal institution at Chino until October 6th when he was transferred to the state prison at Folsom (where he now is); that on September 27th he spoke to Mr. Sess who was in charge of one of the buildings at Chino, asking him about filing a notice of appeal and Sess told him he would have to see Mr. "Nathan"* for permission to file a notice of appeal; that he saw Naquin the next day and asked him about filing an appeal and was told by Naquin to wait until he was sent to the penal institution (Folsom) where it could be taken "care of"; that he told Naquin the judgment had been rendered on September 22d and Naquin said he had 10 "court days" after judgment; that he saw Naquin once or possibly twice thereafter but nothing was said about his appeal because "he thought he [Naquin] was taking care of it"; that he and Naquin "figured out together" that the tenth court day would expire on October 6th; that Naquin took him to "Smitty," a prisoner who typed, to fix his notice of appeal, and Smitty said he would do it; that on October 6th, the day he was transferred to Folsom, his notice was ready and he signed it, and he was told it would be "taken care of";

---

*In his petition for hearing, defendant refers to Mr. Naquin as Mr. "Nathan." However, in his supplement to the petition for hearing, he correctly names the correctional officer Mr. Naquin.

that from what he was told by Naquin and other prison officials his appeal would be satisfactory if he signed it and left it with them as he did on October 6th. Petitioner was represented by counsel when he opposed the State's motion to dismiss in the District Court of Appeal and when he filed a petition for hearing after the District Court of Appeal dismissed his appeal. In a supplemental petition for hearing he says that he did not ask Naquin, a "correctional officer," for legal advice but gave his written notice to him to be typed; that he gave his notice of appeal to "prison officials" on "December 28th 1956" (evidently meaning September 28, 1955) and tried to see Naquin to get his typed notice but was not allowed to do so until after the 10 days had expired; that he could not do as he wished without permission of the prison authorities; that Naquin told him that his notice of appeal would be typed and he would be called in time to meet the time requirement; that he has done all he could do to get his notice filed in time but was deprived of filing it in time by the prison authorities.

Naquin in his affidavits states that he is a correctional officer and defendant requested information about filing an appeal and he told him he could file one; that he was assisted in preparing one which was sent to the clerk of the court; that he was told Naquin could give him no legal advice or prepare appeal "briefs or documents as his appeal action may require"; that "without the inmate's [defendant's] central file for reference" he is not able to state as to the correctness of the dates in defendant's affidavit; that he believes defendant was given the attention and services prescribed and allowable by the agency to which he belongs. In a subsequent sworn statement Naquin said he had examined defendant's file and there is a note on the notice of appeal by Farrell, a prison records officer, that the notice of appeal was mailed October 6, 1955; that he cannot recall any "particular confusion" related to the filing of the notice as it is the practice to allow even late notices of appeal; that he is unable to find any other notations and he does not recall that defendant delivered a notice of appeal for "correction and/or typing" and "it would appear he did not" because the notice in this case is the same generally used.

It will be seen that there is no real dispute about defendant's assertion as to what occurred. Naquin merely says he does not remember and concludes that defendant's notice was late. Defendant's statement that he did not ask the correction officer

for legal advice means little in light of his particular statements as to what did occur.

It thus appears that defendant filed the notice of appeal timely as far as was possible for him to do so or was lulled into a sense of security by the prison officials.

Defendant having done all he could have done and pursued the matter diligently and followed the prison official's advice, it would appear that he should not be deprived of his appeal. In the Slobodion case, *supra,* we stressed the factors that the prisoner had done all he could and had delivered his notice of appeal to the prison authorities but that the notice was not mailed to the clerk in time. In *People* v. *Calloway, supra,* 127 Cal.App.2d 504, the defendant was informed by the prison authorities that he had plenty of time to file his notice of appeal and would be given a pass to call on his counsel for the purpose of preparing and filing the notice. He was transferred to another prison, however, and placed in quarantine until the 10 days had expired. The court said (p. 506) : ''This evidence falls short of presenting the precise factual situation which obtained in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], but, undenied as it is, it tends to make a prima facie showing that defendant was lulled into a false sense of security by a representative of the state, the opposite party in the litigation. Accordingly, as stated in *People* v. *Graff,* 104 Cal. App.2d 32, 34 [230 P.2d 654], '. . . the facts in this case come close enough to the exception to the rule stated in *People* v. *Slobodion* [*supra*], 30 Cal.2d 362 [181 P.2d 868], that this court is of the opinion it would be better to consider and pass upon the contentions made by defendant.' '' In *People* v. *Frye, supra,* 117 Cal.App.2d 101, 102, it is said: ''His [defendant's] notice of appeal, dated June 7th, was received by the clerk of the trial court June 10, 1952, but under rule 31 should have been received June 6th. It appears from a letter of the warden of the state prison where defendant was incarcerated, that the defendant requested permission to forward his notice on June 5, 1952, 'but due to the necessary delay in procedure here, we were unable to arrange for his signing and mailing the Notice until today [June 9] . . . We assume that this Notice is timely within the rule of *People* v. *Slobodion,* (30 Cal.2d 362 [181 P.2d 868]) and *People* v. *Aresen* [91 Cal.App.2d 26 (204 P.2d 389)].' For those reasons we hold that the defendant made a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement as contemplated by law.'' In *People* v. *Rascon,*

128 Cal.App.2d 118, 119 [274 P.2d 899], the court said: "Judgment was rendered on November 27, 1953; the notice of appeal, dated December 2, 1953, was filed December 9, 1953, two days late. In an affidavit appellant states that after judgment was rendered he was sent to the state prison at San Quentin, that on December 2, 1953, he went to the prison sociologist's office where he was interviewed by Mr. Faustman, that at that time he signed his notice of appeal and was told by Mr. Faustman that 'it would be in on time, and that he (Mr. Faustman) said that he would take care of mailing it for me.' Defendant avers: 'I therefore did all in my power to get my appeal in on time by giving it to an employee of the State, and I relied on his representation that it would be mailed on time.' Mr. Faustman, senior sociologist at San Quentin, whose duties consist of interviewing prisoners, preparing case summaries and handling inmate legal matters, in an affidavit declares himself 'at a loss to understand why there should have been the delay evident in this case.' However, he refutes none of the statements made in appellant's affidavit and concludes his affidavit by stating: 'I can only surmise that due possibly to the indirect method of handling the mail out of the Reception-Guidance Center plus the enormous volume processed through the Mail Office at San Quentin every day it became misplaced, and so did not go out until 12-7-54.'

"This case comes within the rule set forth in *People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868]. . . ." (See also *People* v. *Cato*, 136 Cal.App.2d 503 [289 P.2d 119]; *People* v. *Olgin*, 137 Cal.App.2d 286 [270 P.2d 77]; *People* v. *Martiz*, 130 Cal.App.2d 602 [279 P.2d 568]; *People* v. *Aresen, supra*, 91 Cal.App.2d 26; *People* v. *Stinchcomb, supra*, 92 Cal.App.2d 741; *People* v. *Stinchcomb*, 102 Cal.App.2d 626 [228 P.2d 69]; *People* v. *Graff, supra*, 104 Cal.App.2d 32; *People* v. *Kirk*, 109 Cal.App.2d 203 [240 P.2d 630].)

It thus appears that defendant has brought himself within the rules announced in the foregoing authorities and therefore the motion to dismiss the appeal is denied.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied September 6, 1956.