[Crim. No. 8338.   Second Dist., Div. One.   Apr. 30, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER E. ISLAND, Defendant and Appellant.

A. Marco Turk for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Louis L. Selby, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of three counts of selling heroin.

In an indictment filed November 29, 1961, in Los Angeles County, defendant was charged with selling heroin on August 1, 1961, August 2, 1961, and August 11, 1961. It was further set forth that defendant previously had been convicted of an offense involving narcotics. Defendant pleaded not guilty and denied the prior conviction. A jury was waived. A trial was had and defendant was found guilty as charged. It was also found that the defendant previously had been convicted as charged. Defendant applied for probation, which was denied, and he was sentenced to the state prison.

A résumé of some of the facts is as follows: Jerry Chavous, a Los Angeles policeman assigned to the narcotics squad, was acting as an undercover officer on August 1, 1961. On that date, at a hotel, the officer saw defendant, who was known to him as "Nick" and "Nap." The defendant was with George Grady, an informant. The officer handed Grady $30 and Grady in turn handed the money to defendant. Grady stated to the defendant that he, Chavous, wanted "a deuce" (which translated meant a half gram of narcotics). The defendant took apart a large balloon, which contained some smaller colored balloons, and handed two of the smaller balloons to Grady, who then punctured one of them, made a quick test of the material therein and gave the two balloons to the officer. The officer made the usual identification marks on the balloons and turned them over to the proper booking officers.

On the next day, August 2, 1961, at a different location, the defendant and Grady met Chavous. The officer gave Grady some money. Grady in turn handed it to the defendant. The defendant then handed a yellow balloon to Grady, who in turn handed the balloon to the officer. The balloon was marked and booked at the police station.

Chavous again saw the defendant on August 11, 1961, and was asked by defendant, "Are you looking for some stuff?" "Stuff" as so used meant narcotics. Chavous replied, "Yes," and defendant stated that his man had not come yet but that he would take him around where narcotics could be secured. Defendant said that the cost would be $3.00 per "cap" and Chavous gave defendant $21 for seven capsules.

They walked down the street to a hotel, where the officer was directed to wait outside. In about 10 minutes the defendant returned and gave Chavous seven capsules wrapped in paper. The capsules were marked and booked at the police station.

It was stipulated that the substance in the balloons and capsules was heroin.

The officer saw the defendant later and obtained his name from the police "mug files." After the arrest the officer saw the defendant in jail.

Appellant now asserts that the prosecutor utilized leading and suggestive questions in his examination of the officer and that the officer was permitted to refresh his recollection from notes made by the officer, such notes having been changed by the officer subsequent to the time of the making of the original notes.

We deem it unnecessary under the circumstances to set forth at length excerpts from the reporter's transcript, wherein the complained-of leading questions were reported. Suffice it to say that we have read the entire record and the contentions are not well taken. Some leading questions were asked after the witness had previously given, in response to proper questions, the same testimony subsequently adduced by the leading questions. Under the circumstances such is not prejudicial error. (See *People* v. *Raucho*, 8 Cal. App.2d 655, 666 [47 P.2d 1108].) Leading questions are proper in some circumstances. (*People* v. *Harlan*, 133 Cal. 16, 19 [65 P. 9]; *People* v. *Calloway*, 127 Cal.App.2d 504, 508 [274 P.2d 497]; *Estate of Melvin*, 85 Cal.App. 691, 696 [259 P. 980]; *People* v. *De Witt*, 68 Cal. 584, 586 [10 P. 212].) There is no contention here that the prosecutor was in effect testifying instead of the witness. Furthermore counsel for the defendant at the time made no proper objections to the questions, if they were objectionable.

The officer found it necessary to refer to his notes to refresh his memory while testifying. Later it developed that the officer had altered his original notes with reference to the weight and height of the witness [defendant]. Apparently the officer first thought the witness [defendant] was 5 feet 10 inches tall and so recorded such measurements in his notes. The prison, or police records, showed the defendant to be 5 feet 11 inches tall and the officer changed his notes to read accordingly. The defendant testified that he was 6 feet tall. The trial judge, at the time of the motion for a new trial, summarized the matter by saying:

"I remember the statements of the officer to which you refer. He originally estimated the man's height, I believe, at five, ten and the man said he was six feet. But the criminal record where they either measured him where he was in prison before or where he gave his height, it was five, eleven. So I think possibly the officer was wrong by an inch and I think he was wrong by an inch when he said he was six feet."

Further the court said: "But his [the officer's] testimony was quite persuasive. I don't think the officer was mistaken. I never had any doubt. If I had, I would have found this man not guilty."

There is no prejudicial error in the record in this case.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 31, 1963, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1963.