[Crim. No. 12089. In Bank. Nov. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE J. BAILEY, Defendant and Appellant.

**182**

## COUNSEL

Don Edgar Burris, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PETERS, J.**—Petitioner seeks an order permitting him to file a belated notice of appeal pursuant to rule 31(a) of the California Rules of Court.

Petitioner was convicted on May 25, 1967, of two counts of kidnaping for robbery, two counts of first degree armed robbery, and three counts of second degree robbery, not armed. He was sentenced on June 16, 1967.

On October 11, 1967, less than four months later, petitioner sought mandamus to compel the trial court to forward to him the transcript of his trial. At that time he was notified that no notice of appeal had been filed. Petitioner then filed a notice of appeal on December 29, 1967, which was marked "received but not filed." Shortly thereafter, he commenced the instant proceeding.

Petitioner alleges that he requested his attorney to appeal, and that he himself mailed a notice of appeal from the county jail within 10 days of judgment.

In order to ascertain the facts, the Honorable Ross A. Carkeet, Judge of the Superior Court, Tuolumne County, was appointed referee and directed to conduct an evidentiary hearing.

The evidence as found by the referee, may be summarized as follows: Petitioner's attorney, Mr. Scarlett, testified that at the time of the verdict petitioner requested an appeal; that he came to the court for sentencing prepared to file a notice of appeal on petitioner's behalf; that he believes, but is not certain, that an appeal form had been prepared by his secretary; that when petitioner was sentenced, they discussed the matter of an appeal; that petitioner stated he was not guilty and wanted to appeal but was undecided about pursuing an appeal because of concern about serving "dead time" while an appeal was pending, and that he would make up his mind whether to appeal and if he decided to do so file himself. The attorney also testified that he told petitioner of the 10-day limitation for filing notice of appeal and stressed its importance and that petitioner indicated that he understood and would act within the required time. The attorney stated that he did not recall any conversation with Miss Vernetta Badger, a friend of petitioner who testified at the trial, although she may have been present during the conversation with petitioner.

There is other evidence. Petitioner testified that at the time of sentencing he and his attorney discussed the matter of an appeal, that he first told his attorney to appeal but later was undecided about an appeal, and that he "didn't know whether [his attorney] understood [him] to file or not to file" when the talk ended. He did not state whether or not his uncertainty to appeal was due to a fear of serving "dead time." He further testified that about three days after sentencing, being uncertain whether his attorney would file a notice of appeal, he placed a notice in an unsealed envelope in a mail receptacle in the jail. He was familiar with the procedure having filed a notice of appeal in another case four months earlier. Although in the earlier case he had signed an inmate's legal document form and verified his notice when the documents were returned to him by the jail authorities, he did not execute such documents in connection with the notice in the instant

case. He discussed the filing of the notice of appeal with Miss Badger both before and after the notice was filed.

Miss Badger testified that prior to sentencing she spoke to Mr. Scarlett on two occasions and he said he would file a notice of appeal, that as they left the courtroom after sentencing the attorney stated he would "fix the appeal up and see that his secretary gets it out," that thereafter she saw petitioner in the county jail nearly every day, that on one of these visits he showed her a letter which he called his appeal letter, and that in August of 1968 after commencement of the instant proceeding and again on the morning of the instant hearing Mr. Scarlett told her that he had "made the appeals out and gave it to his secretary to send them off" but that he did not know what happened to it.

Lieutenant Mear of the Los Angeles Sheriff's Department testified as to mailing procedures followed at the jail: Mail is deposited in mail receptacles located in the jail, and then gathered by an inmate and delivered into the mail system. It is censored, and legal documents are sorted out of the system. A deputy then prepares a form record of the inmate's legal document and the document is stamped. The inmate signs both the document and the form. No record of a notice of appeal by petitioner in June of 1967 could be found.

On October 11, 1967, less than four months after sentencing, petitioner filed a petition for a writ of mandamus to compel the clerk of the trial court to forward the record on appeal. He alleged that he had filed a timely notice of appeal and attached a document, dated June 19, 1967, which was alleged to be a copy of the notice of appeal. The petition for writ of mandate was ordered off calendar on October 20, 1967, on the ground that the original of the notice of appeal had not been filed. At the end of December, petitioner sent a notice of appeal to the superior court and attached an affidavit stating that he had previously filed a notice of appeal. The notice was marked received but not filed, and shortly thereafter petitioner commenced the instant proceeding.

The referee found that the petitioner did not request an appeal within the 10-day period, but instead instructed his attorney *not* to file a notice of appeal because he was undecided about an appeal and would file his own notice if he decided to pursue an appeal. In making these findings, the referee quoted at length from the attorney's testimony including the part where he stated that petitioner was undecided whether to appeal due to his concern about serving "dead time." The referee further found that petitioner's allegations of filing his own notice of appeal were fabricated, and that petitioner made no efforts to file a notice of appeal within the 10-day period following judgment. In reaching these conclusions, the referee

chose to disregard the testimony of Miss Badger, labeling it confusing and the product of a faulty memory.

The Attorney General has not attacked the findings of the referee. Petitioner claims that the referee improperly disregarded the testimony of Miss Badger and that in light of the liberal rules of construction favoring the allowance of an appeal the weight of the evidence requires a finding that petitioner mailed a notice of appeal. ■ It appears unnecessary to determine the merits of petitioner's request to this court to make independent findings contrary to those of the referee, because under any view of the evidence and consistent with the findings, petitioner is entitled to relief as a matter of law.

■ Rule 31(a) which requires that a notice of appeal in a criminal case be filed within 10 days of rendition of judgment empowers appellate courts to grant relief in proper cases. The power is to be exercised liberally to protect the right to appeal so that appeals may be considered on their merits, and so that forfeitures of substantial rights on technical grounds may be avoided. (E.g., *People* v. *Acosta,* 71 Cal.2d 683, 685 [78 Cal.Rptr. 864, 456 P.2d 136]; *People* v. *Casillas,* 61 Cal.2d 344, 345-346 [38 Cal. Rptr. 721, 392 P.2d 521].)

■ Absent a waiver or estoppel due to undue delay in seeking relief under rule 31(a), a defendant is entitled to relief where he has diligently sought to file a timely notice himself but has been frustrated due to some default on the part of public officials charged with the administration of justice and where he has relied upon a timely promise by his attorney to file an appeal. (*People* v. *Acosta, supra,* 71 Cal.2d 683, 687; *People* v. *Flanagan,* 62 Cal.2d 63, 66-67 [41 Cal.Rptr. 85, 396 P.2d 389]; *People* v. *Johnson,* 61 Cal.2d 843, 844-846 [40 Cal.Rptr. 708, 395 P.2d 668]; *People* v. *Martin,* 60 Cal.2d 615, 617 [35 Cal.Rptr. 769, 387 P.2d 585]; *People* v. *Head,* 46 Cal.2d 886, 887, 889-890 [299 P.2d 872]; *People* v. *Slobodion,* 30 Cal.2d 362, 365 et seq. [181 P.2d 868].) If we were to accept Miss Badger's testimony as to the attorney's promise or petitioner's testimony and supporting circumstances as to his mailing of the notice, it would follow that petitioner is entitled to relief under the above authorities.

■ The referee, as we have seen, rejected their testimony either entirely or in critical respects and accepted the testimony of the attorney. We do not have to resolve this conflict. The attorney's testimony also warrants granting relief.[1]

---

[1] It is settled that the findings of the referee are not binding upon this court even though based on conflicting evidence, that they are entitled to great weight, and that

██ It is settled that the right to appeal is of such importance that a defendant who desires to appeal is entitled to protection during the 10-day period for filing a notice of appeal, that legal assistance to an uninformed client in meeting the requirements for filing an appeal is "indispensable," that if a defendant asks his attorney to appeal and the latter agrees but fails to do so, the defendant is entitled to protection, and that where a defendant requests his attorney to file a notice of appeal, the attorney may in a proper case tell his client that in his opinion the appeal lacks merit but "unless the client abandons his request, the attorney should be under a duty to file such a notice, to secure other counsel, or to instruct the defendant as to the proper procedure." (*People* v. *Tucker,* 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Acosta, supra,* 71 Cal.2d 683, 687; *People* v. *Camarillo,* 66 Cal.2d 455, 458 [58 Cal.Rptr. 112, 426 P.2d 512].)

██ Although, obviously, a defendant may waive his right to appeal by abandoning his request for an appeal, such a waiver must be an informed one, and where a defendant seeks to abandon his request on the basis of a misapprehension as to the effect of an appeal, which misapprehension is communicated to the attorney, the defendant is entitled to protection. The failure of the attorney to correct the misapprehension, under such circumstances, is equivalent to giving wrong advice. ██ The first requirement of any waiver of statutory or constitutional rights is that it be knowingly and intelligently made. (*In re Walker,* 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].) On the basis of this rule we have recently held that a defendant who fails to appeal due to ignorance of the right to appeal or of the 10-day requirement for filing notice of appeal is entitled to relief under rule 31(a). (*People* v. *Acosta, supra,* 71 Cal.2d 683, 687 et seq.; see *People* v. *Castillo,* 71 Cal.2d 692, 696 [78 Cal.Rptr. 869, 456 P.2d 141].) ██ Similarly, where it is established that a defendant's abandonment of a request to appeal is based on a misapprehension as to the effect of filing an appeal, the waiver of the request is not knowingly and intelligently made, and relief under rule 31(a), absent an effective waiver or estoppel, should be available. Such a

---

this court has the burden of determining whether to accept the referee's findings as its own. (E.g., *People* v. *Acosta, supra,* 71 Cal.2d 683, 687; *In re Notz,* 62 Cal.2d 423, 425-426 [42 Cal.Rptr. 321, 398 P.2d 593].) These rules are not directly in point here because under any view of the evidence, including that credited by the referee, petitioner, as we shall see, is entitled to relief. We refuse to follow only the conclusions of law based on this evidence.

conclusion is in accord with the role of this court to exercise the jurisdiction conferred on it by rule 31(a) and whenever possible to grant relief as a matter of policy from the late filing of a notice of appeal (*People* v. *Tucker, supra,* 61 Cal.2d 828, 832), and with the interest of the state that justice be done in criminal cases which reinforces an appellant's claim that his appeal be considered on the merits (*People* v. *Casillas, supra,* 61 Cal.2d 344, 346).

It should be pointed out that in a somewhat analogous situation we have previously recognized that a defendant's misapprehension as to the effect of an appeal furnished an excuse for failure to appeal. In *In re Cameron,* 68 Cal.2d 487, 491-492 [67 Cal.Rptr. 529, 439 P.2d 633], a substantial factor in the defendant's determination to abandon his appeal after he had been sentenced to life imprisonment on his conviction of murder in the first degree was his fear that on a retrial he might receive the death penalty. We held that such unjustified fear constituted an adequate excuse for failure to invoke his remedy by appeal. Although *Cameron* differs in a number of respects from the case before us, it bears emphasis that the abandonment there, as here, was based not on a determination that an appeal would be without merit but on misapprehension as to increased penalties which might result due to the filing of an appeal, and this court recognized that such a misapprehension constituted an adequate excuse for failure to invoke the remedy by appeal.

In the instant case, it is clear from the attorney's testimony as quoted in the referee's report and findings that petitioner wanted to appeal and requested an appeal but was undecided due to his concern that he would be serving "dead time." Petitioner's fear of serving "dead time" due to the filing of the appeal was based on an erroneous view of the law as to the effect of an appeal at least if he started serving time in the state prison. (Pen. Code, §§ 2900, 2900.1; cf. *North Carolina* v. *Pearce,* 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072].) Although petitioner communicated his fear to the attorney, the attorney did not correct the misapprehension.

The referee also concluded that petitioner had unreasonably delayed in seeking an appeal and that this delay constituted a waiver of his right to move for a delayed appeal. However, the record shows that petitioner sought to enforce his appeal rights within four months of sentencing and has proceeded since then with due diligence, and the delay in seeking relief under rule 31(a) should not be deemed a waiver or estoppel. (Cf. *People* v. *Acosta, supra,* 71 Cal.2d 683, 690.)

Petitioner's application for relief under rule 31(a) is granted. The Clerk

of the Superior Court of Los Angeles County is directed to file the notice of appeal heretofore received by him and to proceed with the preparation of the record on appeal.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

This court appointed an able and experienced referee, Judge Ross A. Carkeet of the Superior Court of Tuolumne County. He took testimony, examined witnesses, reached considered conclusions on four specific questions of fact submitted to him, prepared a thoughtful report and proposed findings of fact. For reasons I am unable to comprehend, the majority of this court reject his report and make their own determination on disputed facts.

Four questions were submitted to the referee. His report forthrightly answered each query.

The first issue considered by the referee was: "Within 10 days after rendition of judgment, what, if anything, did petitioner state in regard to an appeal to the attorney who represented him at his trial?" The attorney testified under oath that the petitioner "was not sure as to whether or not he wanted to appeal, and that he had not made up his mind as to whether he wanted to file the notice of appeal in view of the fact that he would be serving dead time. I advised him at that time that if he did want to file the appeal, that he must file the notice of appeal within 10 days from that date." The petitioner himself testified on that subject that he told the attorney to file a notice of appeal "and then I changed it and said no, I wasn't decided about it then." He further conceded that thereafter he did not rely upon his attorney to file the notice of appeal.

The second issue framed was this: "Within this 10-day period, what, if anything, did the attorney say or do in regard to an appeal?" The record is clear that the attorney advised petitioner a notice of appeal must be filed within 10 days, that petitioner indicated he had not made up his mind as to whether he would appeal, and that under these circumstances the attorney had completed his task as appointed counsel and was required to do nothing further.

The third query was: "Within the 10-day period, what efforts, if any, did petitioner make to mail a notice of appeal?" While the petitioner asserted that he made efforts to file an appeal, the county jail records reveal no legal documents deposited for mailing by the petitioner during June or July 1967. There is a record for a notice of appeal sent out by the petitioner on February 10, 1967, in connection with another case in which he is

involved. The referee found that "petitioner was familiar with the mailing procedures of the county jail and knew from his previous experience of February 10, 1967 that if he mailed a notice of appeal he would be required to sign a record of inmate's legal document for such mailing in June of 1967. Admittedly he signed none and there is no record of such documentation ever having gone through the mail channels of the county jail." The referee concluded "that the testimony of petitioner is a fabrication and it is disbelieved by the referee who finds that petitioner did *not* mail a timely notice of appeal within the 10-day period following judgment, and in fact made no efforts to file or mail a notice of appeal for filing within said 10-day period."

On the fourth and final issue the referee found that "upon the foregoing evidentiary features of this case it seems clear to me that there was neither a request by petitioner to appeal, a promise on the part of his trial attorney to appeal, nor an ineffectual effort on the part of petitioner to appeal during the critical 10-day period. Petitioner's plea for relief therefore lacks substance, and I find that within 10 days after rendition of judgment petitioner made no statement in regard to an appeal to the attorney who represented him at the trial indicating to the attorney his desire to appeal."

The majority seem disturbed at petitioner's fear of "dead time" and state it was "an erroneous view of the law" which should have been corrected by counsel. I respectfully suggest that it was not necessarily an erroneous view requiring correction by counsel, and that the petitioner was well alerted to the law and its possibilities. Section 2900 of the Penal Code provides that the "term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant into the custody of the Director of Corrections...." Thus if the petitioner were to remain in the county jail to consult with and assist his counsel during preparation of an appeal, he would receive no credit therefor on his sentence. It would indeed be "dead time." Having suffered a previous conviction, from which he was then appealing, this petitioner was neither naive nor uninitiated and was well aware of the circumstances involved in sentences and appeals.

Since no evidence has been presented to this court more persuasive than the findings and recommendation of the referee, I would adopt his views and deny the relief sought.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied December 10, 1969. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.