John Monroe KIME, Appellant,

v.

Lou V. BREWER, Warden Iowa State Pentientiary, Appellee.

No. 54179.

Supreme Court of Iowa.

Dec. 15, 1970.

George E. Wright of Napier, Napier & Wright, Fort Madison, for appellant.

Ray A. Fenton, County Atty., and James D. McKeon, Asst. County Atty., Des Moines, for appellee.

MOORE, Chief Justice.

We are here presented the question of whether the trial court erred in denying a prisoner's application for writ of habeas corpus based on the grounds he did not have effective assistance of counsel during and immediately after his trial and conviction.

John Monroe Kime was charged with the crime of burglary with aggravation. He was represented by his self-employed attorney, Lawrence Scalise, at his first trial in January, 1968 which resulted in a hung jury. Defendant being without funds, Scalise, an experienced trial lawyer and former Iowa Attorney General, was appointed to continue as defense counsel for the second trial in March, 1968 which resulted in a guilty verdict. On April 5, 1968 Kime was sentenced in Polk County District Court by Judge Gibson C. Holliday to a term not to exceed 50 years in the Iowa State Penitentiary at Fort Madison.

On October 14, 1969 Kime filed an application for a writ of habeas corpus under the provisions of chapter 663, Code 1966. We are not here concerned with the provisions of chapter 1276, Acts of the 63rd G. A., referred to as the uniform post-conviction procedure act which did not become effective until July 1, 1970.

A full evidentiary hearing was held on Kime's application or petition for a writ of habeas corpus after which the trial court on December 16, 1969 filed a carefully prepared review of the applicable law and these findings of fact:

"1) That the petitioner is being held in the Iowa State Penitentiary at Fort Madison, Iowa, by virtue of a mittimus directed to the warden of the penitentiary, following the entry of judgment and imposition of sentence on April 5, 1968;

"2) That the petitioner was at all times represented by competent counsel who discharged his obligation in a conscientious and meaningful manner;

"3) That petitioner's counsel gave consideration to the defenses available to the petitioner at his trial and rejected the alibi defense after carefully investigating the facts as to the petitioner's location at the time of the commission of the offense;

"4) That petitioner's counsel did not advise him that he would appeal his conviction, but advised petitioner that an appeal would be of no help to him;

"5) That the petitioner has failed to establish by the required burden of proof, the existence of jurisdictional defects which make his imprisonment illegal."

Petitioner Kime has appealed from the trial court's order denying the requested writ. He asserts the trial court erred in finding (1) his counsel's failure to submit alibi evidence did not constitute denial of effective assistance of counsel and (2) counsel had not advised Kime an appeal of his conviction would be made.

I. The following applicable legal principles in prisoner habeas corpus cases under chapter 663, supported by many cited authorities, are recognized in State v. Kendall, Iowa, 167 N.W.2d 909, 910, 911, and Scalf v. Bennett, 260 Iowa 393, 398–400, 147 N.W.2d 860, 863, 864.

■ The trial court's findings in a habeas corpus action involving a state prisoner are binding upon us if supported by substantial evidence.

■ It is not the purpose of a habeas corpus proceeding to determine the guilt or innocence of the prisoner of the crime

charged, nor to pass upon the errors in his trial, nor to retry the facts and pass upon the sufficiency of the evidence to sustain the charge. Unless there was no jurisdiction in the court, the judgment is not void and may not be collaterally attacked by habeas corpus.

■ Lack of effective counsel may constitute a jurisdictional defect reviewable by habeas corpus.

Under the provisions of Amendment 6, section 1 of Amendment 14 to the Constitution of the United States, and Article 1, sections 9 and 10, of the Constitution of Iowa, the accused, Kime, was entitled to effective assistance of counsel and to receive a fair trial.

■ "Effective" does not mean successful. It means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him.

Improvident strategy, bad tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective assistance of counsel. Only in extreme cases where it is shown the trial as a whole was a farce and a mockery of justice will a conviction be set aside because of inadequacy of counsel.

■ It is presumed that a court appointed counsel for an indigent defendant acts properly.

■ The burden of proof is on petitioner to establish his counsel was ineffective and he did not have a fair trial.

■ II. Petitioner testified he told Scalise prior to trial that at the time the crime was committed he was at a movie with his girl friend with whom he was living and later they were with another woman at her home on S.E. Edison Street in Des Moines where they remained the rest of the night. The women testified they would have so testified.

Scalise testified he conferred with Kime several times prior to the first trial and that Kime first indicated he could prove he was in Arkansas at the time of the offense, about three a. m. April 2, 1967. Scalise employed an investigator who determined Kime was not in Arkansas and that Kime had not remained at the Edison Street home as later claimed by him. Kime had been convicted of a felony which Scalise stated caused him to hesitate using him as a witness.

An alleged accomplice and the victim, a Mr. Ponxs, who was shot during the burglary, both testified Kime took part in the burglary. On the first trial Mrs. Ponxs did not identify Kime as a participant.

Mr. Scalise testified that after full investigation it was his theory of defense to attack the witnesses' attempt to identify Kime and not present an alibi defense. Scalise stated he felt he had been compromised by what Kime had told him about a possible alibi and it was his strategy not to offer evidence thereof.

On cross-examination, Scalise stated he did not at any time consider the use of an alibi as a result of his conversations with his client and that he would not allow Kime or anyone else to commit a crime at the time of trial.

Prior to the sentencing Judge Holliday said: "I will ask you now for the record, are you satisfied with his (Scalise) services and his defense for you in your behalf during this last trial?" Kime answered "Right". He was further asked: "Do you have any complaints as to your representation by the Court appointed attorney?" Defendant answered "no".

The record, only part of which we have set out, supra, clearly establishes the trial court's findings of fact numbered 2 and 3 are supported by substantial evidence. Petitioner's first assigned error is untenable.

III. Immediately, after the sentencing Judge Holliday stated: "It is my duty to tell you you do have a right of appeal to

the Supreme Court of Iowa from this trial and this sentence.

"In order to have that appeal perfected you have to cause to be served upon the County Attorney of this county a notice of appeal, and file a return of service with the Clerk of this court within 60 days from this date, or you lose your right of appeal, because the service of the notice of appeal is jurisdictional, and that has to be done.

"If you are unable to provide yourself with counsel, financially unable, for the employment of counsel and preparation of the record and proceedings, and all of what is necessary in the appeal, this Court would be required to furnish it for you."

Before the trial court in the case at bar petitioner testified that before and after the sentencing Scalise "indicated" he was going to file a notice of appeal.

Mrs. Johanne Kime, petitioner's mother, testified "She asked Scalise to file an appeal and he said it wouldn't do any good. She also called him on the phone and asked him and he said it wouldn't do any good."

Scalise testified that immediately after the sentencing Kime was upset because the judge refused his request he be sent to the men's reformatory at Anamosa rather than the men's penitentiary at which time Kime asked "How about an appeal?" Scalise answered: "I think it is fruitless, won't do any good."

Scalise's testimony as abstracted in the record includes: "Scalise said it was his judgment that it would have been a frivolous appeal. He could not then and cannot now think of any points to be raised as valid appeal points.

"Scalise said that he talked to Mrs. Kime in the courtroom and on the telephone two or three times about an appeal. He recalls her calling him twice and it is as she has testified. Scalise told her that he thought an appeal was just fruitless."

■ The trial court's finding that Scalise "did not advise him (Kime) that he would appeal his conviction, but advised petitioner that an appeal would be of no help to him" has substantial support in the record. We are bound by it.

Section 775.5, Code 1966, makes provisions for appointment of defense counsel for indigent defendants. It provides in part " * * * Such attorney need not follow the case into another county or into the supreme court unless so directed by the court at the request of the defendant, * * *."

Kime made no request to Judge Holliday for appointment of an appeal counsel. He first asserted denial of his right to appeal in his petition for writ of habeas corpus, approximately 18 months after his sentencing.

Under his second assigned error petitioner cites and relies on Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L. Ed.2d 340; Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, and Blanchard v. Brewer, 8 Cir., 429 F.2d 89. Each is clearly factually distinguishable from the case at bar. Rodriquez had been told by his counsel an appeal would be taken and an attempt to give or a notice of appeal in open court was made. In Anders an attorney was appointed to appeal, did give notice thereof and later filed a letter stating "no merit found". In Blanchard the attorney assured defendant an appeal would be perfected but did not give a proper jurisdictional notice of appeal.

The record shows to our satisfaction Scalise diligently, conscientiously and capably represented petitioner and that petitioner failed to meet his burden to prove denial of effective counsel.

Affirmed.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent.

**158**

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning in Division III of the majority opinion, and result reached, I respectfully dissent.

At the outset I refer to Blanchard v. Brewer, 8 Cir., 429 F.2d 89.

Blanchard had been convicted and sentenced. This court thereafter dismissed his appeal because the trial attorney failed to serve notice on opposing counsel. In upholding petitioner's request for a habeas writ, unless he was granted an out-of-time appeal, the federal court first observed at page 90:

> "Iowa contends that the court erred by holding appellee was denied effective assistance of counsel because of counsel's failure to comply with the notice requirements of § 793.4 and that the State of Iowa in no way contributed to his denial of counsel. More specifically, Iowa maintains only gross misconduct on the part of retained counsel, such as a complete failure to commence an appeal, e. g., Atilus v. United States, 5 Cir., 1969, 406 F.2d 694, or affirmative coercion on the part of the state forcing a man to abandon his right of appeal, e. g., Ford v. State, 1965, 258 Iowa 137, 138 N.W.2d 116, constitute an effective denial of due process by requiring a criminal defendant to relinquish appellate review. It is argued that counsel's erroneous but good-faith attempted service and Iowa's mere acquiescence therein are not sufficient basis for violation of due process in this factual situation."

And following *id.* is this pertinent guiding statement:

> "Under certain circumstances failure to perfect an appeal is denial of effective counsel. Leventhal v. Gavin, 1 Cir., 1968, 396 F.2d 441. See, also, Entsminger v. Iowa, 1967, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501. Indeed, failure by appointed or retained counsel to commence the simple steps for appeal is a blatant denial of due process. Atilus v.

United States, supra, 406 F.2d 694; Williams v. United States, 8 Cir., 1968, 402 F.2d 548; Wainwright v. Simpson, 5 Cir., 1966, 360 F.2d 307. Distinctions between gross or simple negligence on the part of counsel, or between retained or appointed counsel, or between active or passive negligence on the part of the state are immaterial. Whether counsel's conduct is classified as gross or excusable negligence or whether the state's activity is classified as passive or active is irrelevant, since in either case appellee has been denied effective and complete appellate review through no fault of his own. Compare, Shipman v. Gladden, Or., 1969, 453 P.2d 921 (notice of appeal served on opposing counsel but not timely filed) with Williams v. United States, supra, 402 F.2d 548 (where counsel did not even commence appellate proceedings). In *Shipman,* the Supreme Court of Oregon stated at page 925 of 453 P. 2d:

> " 'The failure to perform the simple procedure of timely filing a notice of appeal is not the "effective" assistance of counsel required by Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158], nor the diligent advocacy required by Anders v. California [386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493]. The failure of counsel to timely file a notice of appeal after he has been requested or agreed to do so is incompetence as a matter of law and a denial of due process. This is equally true whether the negligent counsel has been appointed or retained. The "invidious discrimination" is not between the rich who can hire counsel and the poor for whom counsel must be appointed, but between those who are represented by competent counsel and those whose counsel prove to be grossly incompetent or culpably negligent.' "

Also, in Atilus v. United States, 5 Cir., 406 F.2d 694, defendant, claiming his attorney erroneously failed to give notice of appeal, sought benefit of a delayed appellate

review. Attendant hearing was held at which time these questions were asked and answers given by defendant's trial lawyer:

" 'You recollect that you had any conversation with [Atilus] whatsoever about the question of appealing his case?

" 'A. I think he indicated at the time after the trial that he wanted to appeal and was interested in appealing.

" 'Q. Is it not true that it was in court after he was sentenced that he indicated that he wanted to appeal or that he asked if he could appeal?

" 'A. I believe that is true.

" 'Q. You never filed any appeal for him, did you?

" 'A. No, but we had some extensive correspondence regarding an appeal. Do you want me to go into that?' "

The court then found at page 696:

"The first such correspondence was a letter dated March 26, 1964, six days after the appellant's conviction and sentence. In this letter no word was made concerning an appeal. The lawyer stated 'I am sorry that I was not able to see you before you left going back to Raiford. I will do everything that I can to get you *parole,* and to do everything to take care of business while you are there.' (emphasis added.) The letter enclosed a power of attorney which the lawyer requested Atilus to sign so that the lawyer might collect his fee. The time to appeal expired on March 30th. No response was made by Atilus to the request that he sign the broad power of attorney contained in the letter of March 26th. However, in subsequent letters of April 2nd and April 8th, the lawyer repeated the request that the power of attorney be signed. Finally in the letter dated April 8th, the lawyer enclosed a second power of attorney for him to sign and said, 'I cannot help you until you do this.'

"Of course, by this time the time for filing notice of appeal had expired.

"Our problem here arises from the fact that the status of the relationship between Atilus and his trial counsel is difficult to determine at the time when the right of appeal expired. The lawyer had not asked the court to be relieved from any further representation of Atilus; he had not expressly notified his client that he was withdrawing from the case; nor had he notified him that he would not carry out appellant's expressed wish to file a notice of appeal * * *."

Then, in granting relief requested by Atilus, the court said, in part, at pages 696–698:

"This court has dealt repeatedly with the problem presented when either court appointed counsel or privately engaged counsel is charged, following conviction and sentence, with having failed to provide the effective aid to which the Supreme Court, beginning with Johnson v. Zerbst (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 has said every federally tried accused person is entitled.

"We begin with several basic principles. The first of these is that every convicted person has an absolute right to an appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21."

" *   *   *

"In any event, the undisputed evidence in this record indicates that counsel who owed the highest duty which one man owes to another, i. e., that of lawyer to client, failed to discharge that obligation. He failed to take the simple step of filing a notice of appeal, although requested to do so, and failed to notify his client that he was not taking this step so that the latter could protect his interests either by calling on the court for protection under the Federal Rules as an indigent, or requesting the clerk to enter the notice of appeal on his behalf while he

sought additional counsel. Such conduct clearly violates the requirement that the accused be afforded 'effective aid' at this vital stage of the proceedings."

Additionally, in support of this dissent, see also the cases cited in *Blanchard, supra,* and Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340; Byrd v. Smith, 5 Cir., 407 F.2d 363; People v. Bailey, 81 Cal.Rptr. 774, 460 P.2d 974 (Cal.); Iowa Court Rule 16 (July 10, 1967.)

I would reverse, or in the alternative grant this appellant leave to take a delayed appeal.

BECKER, J., joins in this dissent.