[Crim. No. 14202. In Bank. Dec. 13, 1971.]

In re JAMES ERNEST ANDERSON on Habeas Corpus.

## COUNSEL

James Ernest Anderson, in pro. per., and Frank O. Bell, Jr., under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Albert W. Harris, Jr., Assistant Attorney General, Derald E. Granberg and William D. Stein, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—Petitioner seeks an order permitting him to file a belated notice of appeal under California Rules of Court, rule 31(a).[1]

On December 18, 1967, petitioner was sentenced to the term prescribed by law upon a jury conviction of murder in the second degree. (Pen. Code, §§ 187, 189, 190.) He failed to file a notice of appeal within the period prescribed by rule 31(a), and first made application for relief from such failure 13 months later, on January 17, 1969.[2] Petitioner then asserted, as reason for his failure to have filed a timely notice and failure to have sought earlier relief, that he had relied upon an alleged promise by trial counsel that he would pursue an appeal in petitioner's behalf. That application for relief was denied by the Court of Appeal on March 19, 1969, and in due course a petition for hearing was denied by this court.

Petitioner did not seek relief on his instant application until January 5, 1970, more than two years after sentencing. He asserts in such application, again as reason for his failure to have filed a timely notice and to have sought earlier relief, that his attorney had advised him to forego an appeal for the mistaken reason that the elapsed time during which such an appeal would be pending would be "dead time" and could not be counted against the term of petitioner's sentence. (See Pen. Code, §§ 2900, 2900.1.) Peti-

---

[1]Rule 31(a), dealing with appeals in criminal cases, provides in pertinent part:

"In the cases provided by law, an appeal is taken by filing a written notice of appeal with the clerk of the superior court within 10 days after the rendition of the judgment or the making of the order. . . .

"Whenever a notice of appeal is received by the clerk of the superior court after the expiration of the period prescribed for filing such notice the clerk shall mark it 'Received (date) but not filed' and advise the party seeking to file the notice that it was received but not filed because the period for filing notice of appeal had elapsed and that he may petition the reviewing court for relief by verified statement or declaration under penalty of perjury, setting forth the date of the order or judgment from which the party seeks to appeal, the steps which the party took to file his notice of appeal on time, and any other information which has, or which the party believes has, a bearing upon the circumstances which caused the notice of appeal to arrive late."

[2]Petitioner testified at the evidentiary hearing in the instant case (see, *infra*) that he first filed an application for relief on December 9, 1968, but court records disclose a first filing on January 17, 1969. The application was forwarded in an envelope postmarked January 16, 1969, and was verified by petitioner on January 15, 1969.

tioner concedes that at all pertinent times he was aware of his right of appeal and of the requirement that he file a notice of appeal within 10 days of judgment.

The Honorable Charles J. McGoldrick, Retired Judge of the Superior Court of Sonoma County, was appointed by order of this court as referee and directed to conduct an evidentiary hearing.

Evidence adduced at the hearing discloses that after the verdict but before the pronouncement of judgment petitioner and counsel discussed an appeal, as the result of which petitioner asked counsel to file a timely notice thereof. The attorney recalled, "I told him that I would file . . . for him if he insisted, but I then proceeded to attempt to talk him out of it . . . . (¶) I said, 'You should start serving your term and get the seven years over with as rapidly as possible; if we file an appeal for you, the case will be tied up in the Appellate Court for nine months to a year, and then the best that you can hope for is a reversal and sent back for retrial . . . . I don't expect you to be acquitted or to come out with a manslaughter verdict, and, therefore, you will be serving dead time during this year or year and a half period while the case is in Appellate Court and while the case is in retrial . . . ."[3] Counsel also advised petitioner that although he thought significant trial error had been made and that a reversal on appeal was likely, he was of the opinion that petitioner would be no more successful on a retrial than on the initial trial of the cause, and recommended that petitioner abandon any plan for an appeal and begin serving his time immediately.

Petitioner testified that trial counsel had advised him in a manner which was consistent with counsel's testimony. He stated that he was led to believe that even if he successfully pursued an appeal he would again be convicted of murder in the second degree, and that he would receive no credit for the time served during the appeal. Because he had already served considerable "dead time" awaiting trial, he was persuaded not to appeal.

Following sentence, petitioner was transferred to the Reception Guidance Center at Vacaville, where he was placed in the maximum security wing. He testified that between January 4 and February 9, 1968, he was confined in psychiatric segregation with medication, a type of solitary confinement. Upon his transfer to San Quentin on February 9, petitioner was further confined to a maximum security unit for about five days of observation, and was then released to the general prison population.

---

[3]Petitioner's attorney, at the pertinent times, was apparently not aware of the existence or content of Penal Code sections 2900 and 2900.1, under which time served in the state prison is not "dead time."

Petitioner, according to his own testimony, became aware of his attorney's incorrect advice no later than April 1968, approximately nine months before he first sought to be relieved from the failure to have filed a timely notice of appeal.[4] At this time petitioner was advised that he could seek relief grounded on the erroneous advice, and he discussed with other prison personnel arrangements for the preparation of the necessary application. For the next several months, until August 2, 1968, petitioner enjoyed the same freedom as in the case of other inmates in the general prison population, and apparently discussed but did not arrange for the preparation of an application for relief. Between August 2 and October 25, 1968, he was in segregation in the Adjustment Center for disciplinary reasons. Only for the first 29 days of such confinement was he denied an opportunity to pursue his legal remedies. Petitioner testified that inmates confined to the Adjustment Center are permitted to do legal work, may write letters and receive visitors, and may communicate with other prisoners in the center. Following his release to the general population on October 25, 1968, petitioner delayed approximately another three months (until January 17, 1969) before he filed an application for relief. After the denial of such application on March 19, 1969, he waited almost 10 additional months for a total elapsed period of approximately 21 months after he admittedly became aware of the attorney's error before he sought relief on the specific ground now asserted.

Contrary to petitioner's contentions there is no justification for his continuing delay grounded on his lack of training and education. Petitioner had attended school to the eighth grade, had done better than average work in some subjects, and had a learning level of 6.2. Claim is made also that he suffered from psychotic problems, but such problems had manifested themselves only at a date which was prior to the time he learned of his attorney's erroneous advice, and there is no evidence that these problems disabled him in any way after that date.

---

[4]As hereinafter appears, the referee found that petitioner first became aware of the error in April 1968. Such a finding is favorable to petitioner. His testimony at the evidentiary hearing was uncertain and equivocal. He testified that he became aware of his attorney's inaccurate advice in "March or April" of 1968. Read into the record at the hearing by petitioner's counsel, and stipulated by the parties as factually correct, was a letter of a correctional counselor which states that petitioner was received at San Quentin State Prison on February 9, 1968, and released to the general prison population on February 14. At one point in the hearing, under questioning by his counsel, petitioner stated that he was advised of the erroneous advice "four or five days" after he arrived at San Quentin and, on another occasion, within "two weeks" after his arrival. It would thus appear that the elapsed time between petitioner's awareness that time spent in prison would not be "dead time" on an appeal, and the time he first sought to be relieved from the failure to have filed a timely notice of appeal (January 17, 1969) was approximately 11 months.

The referee found and concluded that petitioner had communicated to his attorney within the 10-day period his desire to appeal; that counsel stated that he would file a notice of appeal if petitioner insisted; that counsel erroneously advised petitioner that time elapsed pending such an appeal would be "dead time" and further stated that in his opinion petitioner would again be convicted of murder in the second degree on a retrial; that petitioner accepted counsel's advice and instructed him not to appeal; that petitioner "first became aware of his attorney's incorrect advice in April of 1968, and failed to take any action in relation thereto until December of 1968, and therefore the writ is not timely pursuant to rule 31(a)."

This court has consistently exercised liberality in granting relief, under rule 31(a), from the late filing of a notice of appeal. (*People* v. *Acosta* (1969) 71 Cal.2d 683, 688 [78 Cal.Rptr. 864, 456 P.2d 136]; *People* v. *Tucker* (1964) 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449].) ▮ Our pronouncements in this area have been tempered by the rule that the waiver of the right of appeal, as in the case of the waiver of any other statutory or constitutional right, can be made, if at all, only knowingly and intelligently. (*In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].) Most of the recent cases dealing with rule 31(a) relief, however, have been primarily concerned with the nature of those disabilities or circumstances which are deemed to impose an unreasonable burden in demanding strict compliance with the requirement that a notice of appeal be filed within 10 days of judgment. ▮ There are now well established and recognized grounds for excusing compliance (see generally, *People* v. *Acosta, supra,* 71 Cal.2d 683, 687), including a misunderstanding induced by trial counsel that time served during an appeal would be "dead time" in tolling the term of a sentence. (*People* v. *Bailey* (1969) 1 Cal.3d 180, 187 [81 Cal.Rptr. 774, 460 P.2d 974].) There are not, however, so well formulated rules which deal with the question of a subsequent waiver of or an estoppel from asserting a right of appeal which might once have been revived pursuant to rule 31(a). This is the critical issue with which we are now confronted. Petitioner's failure to file a timely notice was excusable and he unquestionably became entitled, on the record presented, to rule 31(a) relief, based upon counsel's erroneous advice. (*People* v. *Bailey, supra,* 1 Cal.3d 180.) But the issue is not excuse from an *initial failure* for which there may be justification, but rather excuse from a *second and continuing failure* to seek timely relief. Excuse once established cannot be deemed a palliative for a continuing failure to act after the disability which justified the initial failure has been removed. ▮ Although it is well established that liberality is the keynote in excusing noncompliance (*People* v. *Casillas* (1964) 61 Cal.2d 344, 346 [38 Cal.Rptr. 721, 392 P.2d 521]), it should not be overlooked that the time limit provided by

rule 31(a) "may not be extended" (rule 45(c), Cal. Rules of Court), and is jurisdictional (*People* v. *Lewis* (1933) 219 Cal. 410, 413-414 [27 P.2d 73]).

We have held generally "that any significant delay between sentencing and the filing of a petition for relief from a late filing under rule 31(a) must be reasonably explained or the doctrines of waiver and estoppel will be invoked to deny relief." (*People* v. *Acosta, supra,* 71 Cal.2d 683, 690.) Although significant delays between sentencing and the filing of a petition for relief have been justified, in each of such cases the delay has been deemed to have been reasonably explained for one reason or another. Thus in *People* v. *Garcia* (1965) 63 Cal.2d 265 [46 Cal.Rptr. 324, 405 P.2d 148], a delay of almost a year was justified where the petitioner could "barely write" and read "with difficulty" and where, after being advised that no proper notice of appeal had been filed and that his remedy was to seek appellate court relief, the circumstances of his imprisonment precluded any earlier action than that taken by him. Such circumstances were his nine-month confinement to "the hole" because of an infraction of prison rules. When released from such confinement he "[a]lmost immediately" obtained the help of a knowledgeable inmate who assisted in obtaining information and documents, and "[s]hortly thereafter" the petitioner filed his application for relief. The application was filed approximately two months after Garcia's release from "the hole." It additionally appeared, in aid of the conclusion that Garcia had diligently pursued his remedy, that it was doubtful that he had understood the advice relative to the pursuit of his remedy until he was able to obtain the assistance of his fellow inmate following his release from "the hole." In that case the referee expressly found that the petitioner " 'did not waive the right to a delayed appeal and that there is no reason for an estoppel.' " (63 Cal.2d at p. 268.)

*Garcia,* on the facts as recited therein, stands for the proposition that diligent action during a two-month period *following* the termination of a disability or disabilities which reasonably foreclosed any earlier action, precluded the invocation of a waiver of or an estoppel from asserting the right to rule 31(a) relief.

In other cases in which rule 31(a) relief has been granted the particular disabilities were deemed to justify inaction by the petitioner only while he had remained thus disabled. In *People* v. *Curry* (1965) 62 Cal.2d 207 [42 Cal.Rptr. 17, 397 P.2d 1009], an "emotionally and mentally upset" petitioner who "reasonably believed an appeal would be and had been taken" was held justified in delaying for 10 months before making inquiry of the court wherein he reasonably thought his appeal was pending. (62 Cal.2d at p. 212.) When advised that no appeal was pending he "im-

mediately filed for relief from the default." In *People* v. *Madrid* (1965) 62 Cal.2d 602 [43 Cal.Rptr. 638, 400 P.2d 750], there was an excused five-month delay during which the petitioner was unaware that a promised appeal had not been prosecuted. In *People* v. *Davis* (1965) 62 Cal.2d 806 [44 Cal.Rptr. 441, 402 P.2d 129], and in *People* v. *Johnson* (1964) 61 Cal.2d 843 [40 Cal.Rptr. 708, 395 P.2d 668], there were similar delays of seven months, and in *People* v. *Rapp* (1966) 64 Cal.2d 643 [51 Cal. Rptr. 247, 414 P.2d 375], the delay after promise of an appeal was of eight months' duration. In each of the foregoing cases, the petitioner immediately undertook to seek relief once the disability[5] was removed, and in no case does it appear that this required as much as the two-month period approved in *Garcia*. In *People* v. *Bailey, supra*, 1 Cal.3d 180, it does not appear when the disability, in that case as in the present case a misapprehension as to "dead time" while an appeal was pending, was removed. It does appear that petitioner sought to enforce his right to appeal within four months of sentencing and proceeded with "due diligence" once the disability was removed (1 Cal.3d at p. 187), but the issue critical in the instant case was not raised.

■■ In addressing ourselves to the question whether petitioner in the present case proceeded diligently to protect his right of appeal after all disabilities precluding more timely action had been removed, we are first confronted with a record which shows an initial application for relief filed 13 months after sentencing, and a second and current application filed more than 2 years after sentencing. The separate grounds urged in the two applications appear to be inconsistent. Petitioner first alleged that he had failed to file a timely notice of appeal because he thought counsel was taking whatever action was necessary. In his current application, on the other hand, he claims that he had been persuaded by counsel to abandon the appeal and, accordingly, petitioner must be deemed to have been aware that counsel would not take the very action which petitioner initially claimed he waited for counsel to take. Petitioner contends in the instant proceedings that although he had relied in his initial application on the now abandoned allegation of an unfulfilled promise by his attorney, he had also raised in the earlier proceedings the contention that the failure to file a timely notice of appeal was induced by his attorney's advice relative to "dead time." Such claim is said to have been made in the petition for hearing filed in this court following the denial of the application by the Court of Appeal. That petition, filed more than 14 months after judgment, contained

[5] As used herein a "disability" means any of the recognized circumstances, including a proper reliance on promised or expected action by an attorney, which reasonably precludes timely action or induces inaction on the petitioner's part in protecting his right of appeal.

the first reference relative to the attorney's erroneous advice. Even at that late date, however, petitioner still relied on counsel's claimed unfulfilled promise to file a timely notice. The "dead time" issue was urged only as an explanation for *counsel's* failure to have kept the claimed promise. Petitioner asserted that counsel unilaterally elected not to pursue the appeal after his promise to do so because of his "erroneous and mistaken belief that subject would not be credited with time served should he win a reversal."[6] At no point in the earlier proceedings did petitioner assert that he, petitioner, elected not to appeal because of the "dead time" misunderstanding.

It thus appears that petitioner did not make application for relief on the precise grounds on which he now relies, for more than 2 years after sentencing and approximately 21 months after he became aware of such ground for relief. However, without reaching the question whether considerations of waiver and estoppel in the instant circumstances should be measured against the period of time during which petitioner elected not to assert the specific circumstances which would have entitled him to relief, we think it manifest that this petitioner cannot prevail even when that period is measured against the time when he first sought to be relieved on grounds now recognized to have been asserted in bad faith.

We are compelled to the conclusion, on the entire record, that except for a one-month period during a total of at least nine months, and more likely eleven months, petitioner was under no disability which reasonably could have precluded an application for rule 31(a) relief. During this period he was a member of the general population of a large prison where, according to his own testimony, knowledgeable inmates were available to advise him and he was aware that no notice of appeal had been filed, that he would not risk "dead time" by appealing, and that it was incumbent upon him to make application for relief. Petitioner suffered no limitation significantly different in kind or degree from those suffered by inmates generally or which imposed an unreasonable burden upon him in proceeding forthwith to file the application for relief which he eventually filed no earlier than nine months later. Had he been as well advised and possessed of the same abilities on the day of his sentencing as he was on the day he was informed of his attorney's erroneous advice, he would have been required to have proceeded diligently in filing a notice of appeal

---

[6]Petitioner does not now challenge the referee's finding that petitioner expressly instructed trial counsel not to file a notice of appeal. His explanation at the hearing for what he then recognized as inaccurate if not false allegations as to counsel's promised action was that the inmate who prepared the initial application for relief in petitioner's behalf merely utilized factual allegations with which the inmate had claimed success in obtaining relief in other cases.

within 10 days if he was not to forego the right of appeal. With allowances for the fact of his prison environment and the requirement of preparing a more sophisticated document in seeking rule 31(a) relief, he should have exercised a like degree of diligence in the instant case.

We have heretofore approved in *Garcia*, in the case of an inmate in a state prison a two-month period for the preparation and presentation of an application for rule 31(a) relief *following* the termination of disabilities which precluded an earlier filing. Neither the efficient administration of justice nor any legal compulsion requires more lenient treatment. In no event can we allow a would-be appellant an option as long as that sought in the instant case within which to act to revive a right of appeal first lost for failure to have filed a notice within a jurisdictional time limit.

The referee has expressly found in the instant case that the application was not timely made and that petitioner "is estopped or has waived his right to appeal." This finding is entitled to great weight, although we are not bound thereby. (*People* v. *Acosta, supra,* 71 Cal.2d 683, 687; *People* v. *Garcia, supra,* 63 Cal.2d 265, 268.) However, the record compels the finding and our adoption thereof.

The order to show cause is discharged. Petitioner's application for relief under rule 31(a) and petition for writ of habeas corpus are denied.

McComb, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**PETERS, J.**—The majority state that petitioner was entitled to file a late notice of appeal immediately after the discovery of counsel's erroneous advice on "dead time." I agree. However, the majority go on to hold that petitioner's failure to act promptly after the discovery precludes granting relief. I must respectfully dissent from this holding. In so holding, the majority have forgotten the injustice that led to the promulgation of rule 31(a) and have merely paid lip service to the settled policy that rule 31(a) must be liberally construed in favor of the right to appeal.

Petitioner has presented a reasonable explanation of the delay from the time of his discovery of counsel's error to the time of filing a late notice of appeal. The majority reject this explanation by ignoring or unfavorably interpreting the facts which establish its validity.

The settled policy of liberal construction of rule 31(a) requires us to carefully consider all the facts presented and to interpret them in the light most favorable to petitioner. (E.g., *People* v. *Tucker* (1964) 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449].) Although the ma-

jority recognize the existence of the policy of liberal construction of rule 31(a), they have failed to give effect to the policy.

Moreover, even without interpreting the facts in a favorable light as required by the policy of liberal construction of rule 31(a), the petitioner would be entitled to the relief sought. Contrary to the majority, I believe that petitioner has presented a reasonable and compelling explanation of his delay in filing.

Rule 31(a) was promulgated to prevent the injustice of dismissing a meritorious appeal merely because of a failure to file a notice within 10 days. Because of our recognition of the dangers of depriving the defendant of his rights in order to facilitate the speedy and efficient administration of justice, we have consistently held that rule 31(a) must be liberally construed in favor of the right of appeal. (*People* v. *Bailey* (1969) 1 Cal.3d 180, 185 [81 Cal.Rptr. 774, 460 P.2d 974]; *People* v. *Acosta* (1969) 71 Cal.2d 683, 685 [78 Cal.Rptr. 864, 456 P.2d 136]; *People* v. *Garcia* (1965) 63 Cal.2d 265, 266 [46 Cal.Rptr. 324, 405 P.2d 148]; *People* v. *Davis* (1965) 62 Cal.2d 806, 807 [44 Cal.Rptr. 441, 402 P.2d 129]; *People* v. *Madrid* (1965) 62 Cal.2d 602, 603 [43 Cal.Rptr. 638, 400 P.2d 750]; *People* v. *Curry* (1965) 62 Cal.2d 207, 208 [42 Cal.Rptr. 17, 397 P.2d 1009]; *People* v. *Diehl* (1964) 62 Cal.2d 114, 115 [41 Cal. Rptr. 281, 396 P.2d 697]; *People* v. *Johnson* (1964) 61 Cal.2d 843, 844 [40 Cal.Rptr. 708, 395 P.2d 668]; *People* v. *Tucker* (1964) 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Casillas* (1964) 61 Cal.2d 344, 346 [38 Cal.Rptr. 721, 392 P.2d 521].) In *People* v. *Acosta, supra,* 71 Cal.2d at p. 688, we noted that "we have consistently interpreted rule 31(a) as meaning that 'whenever possible, [this court] should exercise the jurisdiction conferred upon it by rule 31(a), and grant relief, as a matter of policy, from the late filing of the notice [of appeal].' (*People* v. *Tucker* . . . 61 Cal.2d 828, 832.)"

The judicial policy underlying the granting of relief in rule 31(a) cases is based on the desire to avoid the forfeiture of substantial rights on technical grounds and the belief that justice demands the consideration of an appeal on the merits. (*People* v. *Acosta, supra,* 71 Cal.2d at p. 688.)

In *People* v. *Garcia, supra,* 63 Cal.2d at p. 269, we stated that, "Although rule 31(a) contains no express time limitations on its operation, we think an unexplained delay of nearly a year from the time of sentence could constitute a waiver or estoppel." But we accepted a reasonable explanation of the year's delay in *Garcia* as well as in our previous cases interpreting rule 31(a) because of the settled policy of liberal construction of rule 31(a) and because of the requirement that arises from this policy

that any doubts we may have as to whether or not there has been a waiver or estoppel must be resolved in favor of the right of appeal. (*People* v. *Tucker, supra,* 61 Cal.2d at p. 832.) In accepting a reasonable explanation of any delay, we have also recognized the disabilities of prison life, the difficulties in preparing a rule 31(a) motion, and the possibility of ignorance of the right to relief under rule 31(a).

Our policy of liberal construction of rule 31(a), which leads us to accept an explanation that refutes the notion of waiver or estoppel, has been further reinforced by our holding that "[t]he first requirement of any waiver of statutory or constitutional rights . . . is that it be knowingly and intelligently made." (*In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].)

A review of the facts presented in the instant case in light of the settled policy of liberal construction of rule 31(a) demands granting the relief requested in the instant case as in all our previous cases on rule 31(a). Petitioner has given a reasonable explanation for the delay between the time of his discovery of counsel's error and the time of filing a late notice of appeal.

Sometime in March or April of 1968, petitioner discovered that his attorney had given him erroneous advice on "dead time." Petitioner was unquestionably entitled to relief at this time. As we held in *People* v. *Bailey, supra,* 1 Cal.3d at p. 186, "where it is established that a defendant's abandonment of a request to appeal is based on a misapprehension as to the effect of filing an appeal, the waiver of the request is not knowingly and intelligently made, and relief under rule 31(a), absent an effective waiver or estoppel, should be available. . . ."

Petitioner did not lose his right to obtain relief by failing to file a notice of appeal or a motion for relief under rule 31(a) immediately after his discovery of counsel's error. The indigent and uneducated petitioner could not file immediately. Instead, he diligently pursued his remedies as well as he could. He wrote to a legal worker with whom he was acquainted, and he made contact with the inmates who could help him prepare legal papers.

Petitioner did not contemplate filing legal papers himself "[b]ecause I know I couldn't do legal work, I couldn't, I don't know how to do it." Petitioner at that time could read and write but poorly and had a measured grade level of only 6.2.

The majority state that petitioner had attended school to the eighth grade and had done better than average work in some subjects. However,

an eighth grade education is far short of the education required to prepare a complicated legal brief. Furthermore, petitioner testified that he always had trouble reading and writing in school. He received B's in math, a subject which would be of no assistance in preparing a legal brief, but failed English, a subject which would have been of some help.

Petitioner testified that he attempted to arrange with various inmates to prepare papers for him. One inmate did agree to help him, but wanted a payment of $60 in advance. Petitioner was forced to wait until he had the $60. It takes no act of judicial omniscience to recognize that earning this amount of money is no mean task behind prison walls where inmates are paid between $0.02 and $0.35 per hour. (Pen. Code, § 2700.)

By the time petitioner had amassed this sum, the writ-writer had himself been placed in maximum security confinement. Petitioner immediately sought the aid of other inmates. Soon after he had retained another jailhouse lawyer, however, he himself was transferred to the adjustment center.

From August 2, 1968, to October 25, 1968, petitioner was in segregation in the adjustment center for disciplinary reasons. In the adjustment center petitioner was confined to his solitary cell 23 hours a day, able to communicate only with inmates in the adjoining cells. For the first 29 days of his confinement in the adjustment center he was, pursuant to prison routine, allowed to have no papers or books in his cell.

The majority state that after the first 29 days in the adjustment center, petitioner was permitted to have books and to do legal work. However, this permission did petitioner no good. He was incapable of understanding law books and of doing legal work by himself.

Petitioner testified that he never read a law book until he started consulting with the people in San Quentin who were helping him write his writs. The law books he then looked at made no sense to him. He testified that he could not even understand a law book when it was read and explained to him. "They tell me something, something similar to my case and go on that point, but really as far as law goes, I don't know what they was talking about."

Petitioner could get no assistance from his fellow inmates in the adjustment center. To the best of his knowledge, no one in the adjustment center was preparing any writs or was capable of helping him prepare one. While in the adjustment center, petitioner could not communicate with the one inmate who had agreed to help him prepare his writ.

Immediately after his release from the adjustment center, petitioner again began working on his case with the help of his jailhouse lawyer. Within two weeks of his release he had written his trial attorney for needed papers. Petitioner asked the attorney to send him the transcripts of the trial and commented, "Although you did advise me not to appeal my case, I strongly feel under my present circumstances that my case needs a final determination in the courts."

In a letter dated November 20, 1968, the attorney answered petitioner's letter, explaining that he was sending part of the transcript and that another part was still on loan to other attorneys. The attorney indicated that he would be willing to give petitioner additional information not contained in the transcript if he was bent on planning any legal type of proceeding, but discouraged petitioner from appealing by repeating his erroneous belief that petitioner would be forced to serve "dead time."

The attorney did not offer to represent petitioner on appeal, and petitioner did not feel he could ask for his assistance. He testified that, "I figured Mr. Winters had been appointed by the Court, and I didn't feel that he still had my case since the sentence was over. I didn't feel he still had authority to, you know, I thought maybe I had to retain him, which I didn't have the fee." He stated that he did not want to bother Mr. Winters since he believed that the court would appoint another attorney after he filed a notice of appeal.

On January 17, 1969, soon after receiving the reply from his attorney, petitioner filed the writ prepared for him by another inmate in the Court of Appeal. The writ was denied. Petitioner immediately petitioned for hearing in this court.

On February 24, 1969, with the help of the inmate who had first promised to help him, petitioner filed a supplementary petition in this court. In that petition petitioner set forth, as one reason for not appealing previously, his attorney's belief that he would be serving "dead time" during the entire appellate process. This court denied the petition for hearing on March 19, 1969, two justices dissenting. The instant petition was filed on January 5, 1970.

The majority are distressed by the fact that petitioner's original petition set forth as an explanation of the delay petitioner's reliance on an alleged promise of his attorney to appeal. Petitioner admits that there was no such promise and that this explanation of the delay was false. However, petitioner, an untutored and naive young man, cannot be blamed for the errors in his original brief. They were not made in bad faith.

As petitioner explained, "Well, in most of those petitions, as I explained before, another inmate had done it for me, and he was using all methods that he knowed and he had got other guys granted on, and mostly I just read through it and just signed it, not actually knowing what was in, what was actually what it said, because I don't know that much about law."

As soon as the first inmate who had agreed to help petitioner was released from segregation, petitioner corrected the errors in his petition. "Well, the other guy, the first guy, he was released from segregation and he told me I should have waited on him. So, I showed him a copy of what the other guy had filed, the first guy had filed to the District Court. He told me to file a supplementary to the Supreme Court. So he filed a supplementary to the Supreme Court." This supplementary set forth the ground now alleged for relief, ignorance of the error in counsel's advice. Petitioner's claim, as presented in the supplementary and in the instant petition, was found to be a valid claim by the referee.

Petitioner admits that his original petition set forth a false ground for relief, but he should not be precluded from relief when he now sets forth a substantial and truthful ground for relief. The majority expect jailhouse lawyers and uneducated inmates to prepare briefs with the sophistication and integrity of polished practitioners. This is an unreasonable burden.

The majority ignore all the facts which support the reasonableness of petitioner's claim for relief. Although they are willing to make allowances for late filing because of the prison environment and because rule 31(a) requires a sophisticated legal document, they do not give these factors the weight they deserve.

The indigent prison inmate is essentially deprived of the effective assistance of counsel. This deprivation cannot be minimized. The right to assistance of counsel is essential throughout the criminal process and the denial of this right is constitutionally intolerable. (*Anders* v. *California*, 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396].)

In determining whether a defendant who has stated grounds for the filing of a belated appeal should nevertheless be denied relief because of a delay in seeking timely relief under rule 31(a), we must also give great weight to the fact that, unlike a notice of appeal, a petition to file a belated appeal may be a complex and lengthy document. The petition must effectively allege all of the facts (*In re Swain*, 34 Cal.2d 300 [209 P.2d 793]), and should set forth the relevant legal authorities. The petition is not merely a notice.

It should also be borne in mind that most defendants, if not all, are aware of the possibility of an appeal, but there is grave danger that a

petitioner, having learned that he has been wrongfully denied an appeal, will not be aware of the relief available under rule 31(a). This is particularly true in light of the many older cases which state that the filing of a notice of appeal is jurisdictional and that no relief is available from the failure to file a timely notice. (E.g., *In re Del Campo,* 55 Cal.2d 816, 817 [13 Cal.Rptr. 192, 361 P.2d 912].)

The majority ignore all of the circumstances which support the reasonableness of petitioner's delay merely because the delay came *after* petitioner's original disability was removed. However, there is no difference between petitioner's delay after discovery of counsel's error and the delays we have accepted as reasonable in previous cases. One disability was removed after petitioner's discovery of counsel's error, but other disabilities remained.

In *People* v. *Garcia, supra,* 63 Cal.2d 265, a case quite similar to the case at bar, we allowed for a delay of nearly a year *after* petitioner received notice that his late notice of appeal was not accepted. Garcia could barely write and read with difficulty. He also had been transferred from prison to prison and spent some time in isolation. In *People* v. *Curry, supra,* 62 Cal.2d 207, 212, relief was granted despite a 10-month delay in filing in large part because the petitioner there had been emotionally and mentally upset during much of the time. Shorter delays have not been thought to require extensive justification. (See, e.g., *People* v. *Madrid, supra,* 62 Cal.2d 602 [five months]; *People* v. *Acosta, supra,* 71 Cal.2d 683 [five months]; *People* v. *Davis, supra,* 62 Cal.2d 806 [seven months]; *People* v. *Johnson, supra,* 61 Cal.2d 843 [seven months]; *People* v. *Rapp* (1966) 64 Cal.2d 643 [51 Cal.Rptr. 247, 414 P.2d 375] [eight months].)

I am aware that the referee concluded that petitioner's eight-month delay in filing for relief pursuant to rule 31(a) constituted a waiver. However, the referee failed to comment in any way upon the uncontradicted evidence adduced at the evidentiary hearing which accounted for petitioner's having had to wait from April, when he discovered his attorney's erroneous advice, until December or January to file for relief. The referee merely stated his conclusion that the delay constituted a waiver.

The referee's findings, while entitled to great weight, are not binding upon this court. (*People* v. *Bailey, supra,* 1 Cal.3d 180, 185-186, fn. 1; *People* v. *Acosta, supra,* 71 Cal.2d 683, 687; *In re Notz* (1965) 62 Cal.2d 423, 425 [42 Cal.Rptr. 321, 398 P.2d 593].)

Petitioner's delay through April of 1968 is, of course, adequately explained by his ignorance that his attorney's advice was erroneous. When the further delay is viewed in the light of his limited education, his limited

ability to read and write, his inability to prepare a petition under rule 31(a) without help, the evidence as to his efforts to secure help, his confinement to the adjustment center where he was unable to communicate with the inmate who had agreed to assist him, his communication with his attorney shortly after release from the adjustment center, and his filing of the petition for relief shortly after receiving his attorney's answer, I am satisfied that the delay was not unreasonable and that petitioner is entitled to relief under rule 31(a).

Moreover, the instant case is not an appropriate one for finding a waiver or estoppel because petitioner, after discovering that his counsel's advice was erroneous, repeatedly and continually sought to secure an appeal.

I would grant the relief requested by petitioner and give him the right to have his appeal considered on the merits.

Tobriner, J., concurred.